HAMILL, J.T.C.
The issue in this state tax matter is whether plaintiff George V. Richardson is entitled to a complete abatement of interest on a gross income tax deficiency for the 1988 taxable year. Plaintiff asserts that he is so entitled under N.J.S.A 54:49-llb because the Division of Taxation’s instructions to the 1988 gross income tax return constituted “erroneous advice” on which he reasonably relied. The Director responds that N.J.S.A 54:49-llb, which was enacted in December 1992 as part of the Taxpayer Bill of Rights, L.1992, c. 175, § 4, and became effective on July 1, 1993, does not apply to a taxable year ending before the operative date of the section. Alternatively, the Director asserts that the return instructions did not constitute erroneous advice.
During 1988 Mr. and Mrs. Richardson were New Jersey residents. For one month of that year Mr. Richardson received salary income from New York sources. As Mr. Richardson was subject to tax in New York, in computing his and Mrs. Richardson’s New Jersey gross income tax, he claimed a credit for taxes paid to New York. N.J.S.A 54A:4-1. In calculating the resident credit, the Richardsons included in the numerator of the resident *345 credit fraction their New York adjusted gross income amounting to $92,224. The Director reduced this figure to $37,368, the amount of Mr. Richardson’s salary income from New York sources. As a result, the Division assessed a deficiency in gross income tax amounting to $1,020.37 plus interest and penalty. Mr. Richardson ultimately agreed that the additional tax was owed and paid the deficiency plus interest and penalty. He asserted, however, that he and Mrs. Richardson should be charged no penalty or interest from the date the return was due (April 15, 1989) to the date he first received notice of the deficiency in March 1992. The Division of Taxation agreed to refund the entire penalty; it agreed to abate interest from the statutory rate of 5% above prime to 3% above prime and to refund the difference. The Director insists that there is no obligation to, and indeed no authority, to abate and refund any more of the interest.
As amended by section 4 of L.1992, c. 175, known as the Taxpayer Bill of Rights, N.J.S.A 54:49-lla provides:
If the failure to pay any such tax when due is explained to the satisfaction of the director, he may remit or waive the payment of the whole or any part of any penalty and may remit or waive the payment of any interest charged in excess of the rate of 3 percentage points above the prime rate including any such penalty or interest with respect to deficiency assessments made pursuant to B.S. 54:49-6.
The only statutory authority for waiving interest below 3% above prime is found in N.J.S.A 54:49-llb, a section that came into existence with the Taxpayer Bill of Rights. N.J.S.A 54:49-llb provides:
The director shall waive the payment of any part of any penalty or any part of any interest attributable to the taxpayer’s reasonable reliance on erroneous advice furnished to the taxpayer in writing by an employee of the Division of Taxation acting in the employee’s official capacity, provided that the penalty or interest did not result from a failure of the taxpayer to provide adequate or accurate information.
The Director concedes that plaintiff reasonably relied on the instructions for the 1988 gross income tax return, that the instructions constituted written advice furnished to the taxpayer by an employee of the Division of Taxation acting in the employee’s official capacity, and that the assessment of interest with respect to the deficiency did not result because plaintiff failed to provide *346 adequate or accurate information. The Director insists, however, that the advice contained in the 1988 return instructions was not erroneous and that N.J.S.A 54:49 — lib does not apply because the tax period in question, 1988, predates the operative date of N.J.S.A. 54:49-llb. If the Director is correct that the provision is inapplicable to a 1988 gross income tax return, there is no need to reach the question whether the return instructions constituted erroneous advice.
The Taxpayer Bill of Rights was signed by Governor Florio on December 10, 1992. Section 44 of the Act provides:
This act shall take effect immediately, provided however that sections 1 through 41 and section 43 shall remain inoperative until the July 1 next following enactment, provided however that sections 9, 10, 13, 17 and 18 shall remain inoperative until the January 1 next following enactment.
The section of the Act amending N.J.S.A. 54:49-11, which is at issue here, is section 4. Thus, under the effective date provision quoted above, N.J.S.A 54:49-llb, became operative on July 1, 1993.[1]
Defendant argues that the delayed operative date in and of itself indicates that N.J.S.A. 54:49-llb cannot be applied with respect to interest accruing on a 1988 return. The fact that the operative date was delayed until July 1, 1993, certainly indicates that the Legislature intended that there could be no consideration of the issue of erroneous advice until that date. The delayed operative date, however, does not speak to the issue of whether, once July 1, 1993, had arrived and the issue of erroneous advice was presented, a court could consider erroneous advice that was given prior to July 1, 1993.
Some dates are in order. Under N.J.S.A 54:49-llb, the conduct giving rise to the Director’s obligation to waive interest entirely is a taxpayer’s .reasonable reliance on erroneous advice. If the advice takes the form of instructions in a gross income tax return, a taxpayer’s reasonable reliance presumptively occurs *347 when a taxpayer completes his gross income tax return, normally before April 15 of the post-tax year. In plaintiffs case, there is nothing to indicate that the 1988 gross income tax return was not timely filed, and so plaintiffs reliance on the purported erroneous advice had to have occurred prior to April 15,1989. The Division of Taxation’s notice of adjustment proposing the deficiency assessment was issued in March 1992, and its revised final determination fixing the assessment and agreeing to eliminate the penalty and two percentage points from the interest calculation was issued on March 1, 1993. On May 26,1993 plaintiff filed his complaint. As previously indicated, N.J.S.A 54:49-llb became operative on July 1, 1993.
, It is clear from the above that the statute creating a right to complete abatement of interest became operative more than four years after plaintiffs reasonable reliance on the Division’s purportedly erroneous return instructions. It is equally clear that the law now in effect gives plaintiff a right to full abatement assuming that the return instructions were in fact erroneous. The question thus becomes whether the law in effect at the time of this court’s decision or the law in effect at the time of the conduct in question should govern.
As a general proposition, “courts favor the prospective application of statutes” unless the Legislature indicates otherwise. Phillips v. Curiale, 128 N.J. 608, 615, 608 A.2d 895 (1992); Schiavo v. John F. Kennedy Hosp., 258 N.J.Super. 380, 384, 609 A.2d 781 (App.Div.1992), aff'd o.b., 131 N.J. 400, 620 A.2d 1050 (1993). See also Twiss v. State Dep’t of Treasury, 124 N.J. 461, 466, 591 A.2d 913 (1991); Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981). The reason behind the rule is that “retroactive application of new laws involves a high risk of being unfair.” Gibbons v. Gibbons, supra, 86 N.J. at 522, 432 A.2d 80 (quoting 2 Sutherland, Statutory Construction, § 41.02 (4th ed. 1973)). The rule, however, is simply one of statutory construction; ultimately the question is one of legislative intent. Ibid.; see also Twiss v. State Dep’t of Treasury, supra, 124 N.J. at 467, 591 A.2d 913; *348 State Dep’t of Envtl. Protection v. Ventron Corp., 94 N.J. 473, 498, 468 A.2d 150 (1983).
On the other hand, there is a competing doctrine'that a court should apply the law in effect at the time of its decision. Phillips v. Curiale, supra, 128 N.J. at 615, 608 A.2d 895. Traditionally, the time-of-decision rule was thought to apply where the statutory law changed between the date of an administrative or judicial decision and the date of an appellate court’s decision on direct review. Riggs v. Long Beach Tp., 101 N.J. 515, 521, 503 A.2d 284 (1986); Kruvant v. Mayor & Council Tp. of Cedar Grove, 82 N.J. 435, 440, 414 A.2d 9 (1980); Schiavo v. John F. Kennedy Hosp., supra, 258 N.J.Super. at 387, 609 A.2d 781. As pointed out by our Supreme Court in Phillips v. Curiale, supra, 128 N.J. at 615, 608 A.2d 895, the time-of-decision rule was broadened by the United States Supreme Court in Bradley v. School Bd. of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), to situations not necessarily involving a change in statutory law while a case is pending on appeal. The Court in Bradley held that a statute giving the prevailing party in a school desegregation case the right to attorney’s fees should be applied in a case that was pending in a court of appeals on the effective date of the statute. The Court stated:
We anchor our holding in this case on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.
[Bradley, supra, 416 U.S. at 711, 94 S.Ct. at 2016]
As further pointed out by our Supreme Court in Phillips v. Curiale, supra, in Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the United States Supreme Court noted the tension between the broadened time-of-decision rule as enunciated in Bradley and the “generally accepted axiom that ‘[rjetroactivity is not favored in the law____ [Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.’ ” Kaiser Aluminum v. Bonjorno, supra, 494 U.S. at 837, 110 S.Ct. at 1577. (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 *349 (1988)). The Court in Kaiser Aluminum applied the Bradley test but concluded that, based on clear Congressional intent, the statutory rate of interest in effect at the time a trial court entered judgment, not the rate enacted during the pendency of the appeal, should be applied in an antitrust dispute between private parties.[2]
The tension between the two rules is evident as well in Bennett v. New Jersey, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), in which the Court held that a statutory amendment making changes in the substantive requirements for certain federal grants would not operate retroactively to determine whether federal grants were misused during a period that preceded the statutory amendment. The Court distinguished Bradley by pointing out that the federal government’s right to recover misused funds preceded the statutory amendment such that the government’s right to recover had matured and become unconditional prior to the change in law. The Court pointed as well to the fact that neither the federal auditors nor the State of New Jersey could have contemplated that the propriety of the grants would be tested by a standard that was not in effect at the time the monies were expended. Id. at 640, 105 S.Ct. at 1560. Finally, the Court found no expressed intent in either the statute itself or its legislative history that the standards contained in the amendments would apply retroactively. Id. at 641-645, 105 S.Ct. at 1561-1563.
The debate as to which rule should govern appears to have been laid to rest in Landgraf v. USI Film Products, — U.S.-, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Court there held that provisions in the Civil Rights Act of 1991 that created a right to recover compensatory and punitive damages for certain violations of Title VII and provided for trial by jury if such damages were *350 claimed would not apply in a Title VII case pending on appeal when the statute was enacted. The Court confirmed that there is a “presumption against statutory retroactivity____” Id. at-, 114 S.Ct. at 1501. The Court limited the broad suggestion in Bradley that a court should apply any new statute in effect at the time of its decision. It stated that Bradley “did not alter the well-settled presumption against application of the class of new statutes that would have genuinely retroactive effect.” Id. at-, 114 S.Ct. at 1503. It distinguished Bradley on the basis that, since it was likely that attorney’s fees would have been awarded under equitable principles had the statute not applied, the statute in Bradley awarding attorney’s fees “ ‘did not impose an additional or unforeseeable obligation’ upon the school board.” Id. at-, 114 S.Ct. at 1503 (quoting Bradley, 416 U.S. at 721, 94 S.Ct. at 2021). Bradley, according to the Court was not intended “to displace the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment.” Landgraf, supra, — U.S. at-, 114 S.Ct. at 1504.
The Court in Landgraf was careful to point out the instances in which a newly enacted statute or statutory amendment may be applied to a case pending on appeal. Most of these, according to the Court, involve instances where the statute does not truly operate in a retroactive fashion. The instances include statutes governing the propriety of injunctive relief because such relief operates in the future, statutes conferring or ousting jurisdiction because jurisdictional statutes “ ‘speak to the power of the court rather than to the rights or obligations of the parties[.]’ ” Id. at -, 114 S.Ct. at 1502 (quoting Republic Nat’l Bank of Miami v. United States, 506 U.S. 80,-, 113 S.Ct. 554, 565, 121 L.Ed.2d 474 (1992)). Similarly, according to the Court, changes in procedural rules may often be applied in suits arising before their enactment because of the diminished reliance interest in matters of procedure. Landgraf, supra, — U.S. at-, 114 S.Ct. at 1504. And in every case, the initial question is whether the legislature has prescribed the temporal effect of the statute. Id. at-, 114 S.Ct. at 1505.
*351 Having determined that the Civil Rights Act of 1991 gave no clear indication of its temporal reach, the Court analyzed the provisions at issue based on whether the amendments retroactively affected substantive rights, conduct, or liabilities and concluded that all three provisions should be given prospective effect. The Court held that retroactive imposition of punitive damages would be akin to an unconstitutional ex post facto law imposing punishment for past acts. Id. at---, 114 S.Ct. at 1505-06. As to compensatory damages, the Court reasoned that such damages are backward-looking, requiring particular individuals to pay for harms they have caused in the past and attaching new legal burdens to prior conduct creating those harms. Id. at-, 114 S.Ct. at 1506. The right to a jury trial was a procedural change that ordinarily should govern in trials taking place after the statute’s effective date. Id. at-, 114 S.Ct. at 1505.
As made clear in Phillips v. Curiale, supra, our Supreme Court has analyzed the tension between the general rule of statutory prospectivity and the time-of-deeision rule by reference to United States Supreme Court eases. In Landgraf the Supreme Court reduced the tension between the two rules, making clear that the general rule of statutory prospectivity takes precedence. Presumably our Supreme Court would follow suit. It is thus the general rule of statutory prospectivity that should govern this case unless one of the exceptions recognized in New Jersey applies.
As stated by our Supreme Court in Phillips v. Curiale, supra, 128 N.J. at 617, 608 A.2d 895, the first question is whether the Legislature intended that section 4 of the Taxpayer Bill of Rights, N.J.S.A. 54:59-llb, should be retroactively applied. Such intent will not be found in “ ‘a statute [that] changes the settled law and relates to substantive rights ... unless there is an unequivocal expression ... ’ ” of an intent to give the statute retroactive effect. Phillips v. Curiale, supra, 128 N.J. at 617, 608 A.2d 895 (quoting Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95, 577 A.2d 1239 (1990)). There is no indication in the language of the statute that section 4 is to have retroactive effect. Under the effective date provision, section 4 was to “remain *352 inoperative until the July 1 next following enactment____” Nor is there any suggestion in the legislative history that the section is to apply retroactively.
Plaintiff maintains that section 4 must be applied retroactively because section 42 of the Act sets forth “operative dates” for eight different sections, not including section 4. Plaintiff is correct that section 42 of the Act, codified at N.J.S.A. 54:48-7, prescribes specific points in time when various sections of the Taxpayer Bill of Rights are to be first applied. For instance, under N.J.S.A 54:48-7a, sections 2 and 3 of the Act, N.J.S.A. 54:49-4 and N.J.S.A. 54:49-6, pertaining to the assessment of penalties, is to apply “for failures to file, underpayments and deficiencies first assessed on and after the July 1 next following their enactment” (emphasis supplied), i.e., first assessed on and after July 1, 1993. Section 12 of the Act, N.J.S.A. 54:51A-23, is to apply to “employee actions” on and after July 1,1993. N.J.S.A 54:49-7e. Section 12, N.J.S.A 54:51A-23, grants taxpayers a cause of action against the State for economic damages suffered as a result of a Division employee’s knowing disregard of a tax law or regulation or knowing failure to release a lien or bond against a taxpayer’s property.
• Section 42, as plaintiff states, contains no provision applicable to section 4. But the omission does not suggest that section 4 should apply retroactively to erroneous advice relied upon prior to July 1, 1993 because the omission is not an “unequivocal expression” to give the section retroactive application.[3] Phillips v. Curiale, supra, 128 N.J. at 617, 608 A.2d 895. The Legislature’s focus in section 42 on the operative fact or conduct bringing certain sections of the Act into play is logically attributable to the significance and difficulty of the temporal reach of those sections, e.g., the statutes of limitations on assessment, N.J.S.A 54:48-7b, *353 and refund claims, N.J.S.A. 54:48-7c, the ability of a prevailing taxpayer to recover costs of litigation, N.J.SA 54:48-7d, and the elimination in many cases of the requirement that a taxpayer post security in order to forestall collection during the pendency of a tax appeal. N.J.SA 54:48-7f. The failure to specify the operative conduct bringing section 4 into play simply suggests that the Legislature was willing to have the temporal reach of that section resolved by application of the general rules of statutory interpretation. See Landgraf, supra, — U.S. at---, 114 S.Ct. at 1494-95.
Plaintiff further argues that section 11 of the Act, could be applied to tax periods that predate the section’s delayed operative date, and, if that is the case with section 11, it could also be the case with section 4. Section 11, N.J.SA 54:51A-22, grants a prevailing taxpayer the right to recover litigation costs from the State if “the position of the State was without reasonable basis in fact or law.” Section 42d, N.J.SA 54:48-7d, makes section 11 applicable to determinations, etc., made on or after July 1, 1993. As plaintiff suggests, a determination by the State after July 1, 1993, might well apply to a return filed for 1992 or earlier. That fact, however, has no bearing on the operative date of section 4. Quite clearly there is no uniform rule of prospective or retroactive application for the entire Taxpayer Bill of Rights. As evidenced by section 42 and also by sections 1 and 7, a variety of conduct triggers the operation of the statute. Since this conduct occurs on a variety of dates, no single date controls. Thus, each section must be separately analyzed to determine the operative conduct that brings it into play. See Landgraf, supra, — U.S. at-, 114 S.Ct. at 1505. Sections other than those addressed in sections 1, 7, and 42 do not specify the operative conduct that brings a particular section into play.[4] As previously indicted, this simply *354 means that for these sections, including section 4, the general rules of statutory interpretation are to apply.
. [4] Application of N.J.S.A. 54:59-llb to conduct that occurred no later than April 15, 1989, would be quintessentially retroactive. The “relevant activity that the rule regulates” — a taxpayer’s reasonable reliance on erroneous written advice — occurred well before the effective date of the statute. Landgraf, supra, — U.S. at-, 114 S.Ct. at 1524 (Scalia, J., concurring in judgment); United States v. Magnolia Petroleum Co., 276 U.S. 160, 48 S.Ct. 236, 72 L.Ed. 509 (1928) (date from which interest would run on a federal tax refund was fixed by statute in effect when claim was filed, not statute as amended while case was on appeal).[5] The statute created a right that did not exist previously — a right to full abatement of interest. By creating a right to full abatement, N.J.S.A. 54:49-llb “attaches new legal consequence to events completed before its enactment”. Landgraf, supra, — U.S. at -, 114 S.Ct. at 1499. When the Division of Taxation issued the 1988 return instructions, it had no way of knowing that any “erroneous advice” contained in those instructions would entitle taxpayers to full abatement of deficiency interest. Similarly, when they completed their 1988 returns, plaintiff had no expectation that he would be entitled to a full abatement of interest in the event the instructions were erroneous. Retroactive application in this case of the new standard mandating a return of interest due to “erroneous advice” would change the rules and expectations under which both state employees and taxpayers operated in 1988 *355 and 1989. See Bennett v. New Jersey, supra, 470 U.S. at 640, 105 S.Ct. at 1560.
Defendant maintains that the “relevant activity” that determines whether the statute is being applied retroactively is the filing of a return for a tax period beginning before section 4’s effective date of July 1,1993. The difficulty with the argument is that N.J.S.A. 54:49-llb makes no reference to a tax period. The operative conduct it mentions consists of erroneous advice and reasonable reliance. Moreover, under the Director’s position that the provision cannot apply to a tax period beginning before July 1, 1993, for the 1993 calendar year beginning on January 1, 1993, the section would not apply even though the taxpayer relied on erroneous return instructions in April 1994, well after the section’s effective date. The determining fact is the “relevant activity that the rule regulates.” Landgraf, supra, — U.S. at-, 114 S.Ct. at 1524. That conduct here is the taxpayer’s reasonable reliance on erroneous advice.[6]
Nor is this a case where either the exceptions discussed by the United States Supreme Court in Landgraf or the exceptions detailed by our courts apply. N.J.S.A. 54:49-llb does not confer or withdraw a right to injunctive relief. See Landgraf, supra, — U.S. at-, 114 S.Ct. at 1501; Gibbons v. Gibbons, supra, 86 N.J. at 523, 432 A2d 80. Nor does it deal with the court’s jurisdiction or court procedure. Landgraf, supra, — U.S. at---, 114 S.Ct. at 1501-02. As previously indicated, there is neither an explicit nor implicit intent in the statute that section 4 be applied retroactively. Schiavo v. John F. Kennedy Hosp., supra, 258 N.J.Super. at 385, 609 A2d 781.
Under New Jersey law, the statute is not curative. Ibid. A curative amendment makes an existing statute comply with its *356 original legislative intent by correcting an error or inadvertence. Kendall v. Snedeker, supra, 219 N.J.Super. at 287-290, 530 A.2d 334. The curative exception cannot be invoked “merely because an amendment is deemed to better a statutory scheme.” Id. at 289, 530 A2d 334. As Judge Long pointed out in Kendall, the principle underlying the general rule of prospective application of statutes is that retroactive application is often unfair. The curative exception is based on the fact that amending a statute to effect the Legislature’s original intent is not unfair because the amendment simply clarifies what was originally intended. N.J.S.A. 54:49-llb represents a change in the law — the creation of a right to full abatement of interest — rather than a clarification or correction of the previously existing statute. It is thus not curative in nature.
Nor is the statute ameliorative as that term is understood in determining whether to apply a statute retroactively. “The ameliorative exception applies only in criminal law, in cases where the statute is intended to impose a lesser punishment.” Fasching v. Kallinger, 227 N.J.Super. 270, 274, 546 A.2d 1094 (App.Div. 1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989); Kendall v. Snedeker, supra, 219 N.J.Super. at 286, 530 A.2d 334.
The final exception to the general rule of prospectivity involves a situation where the “expectations of the parties warrant the retroactive application of the statute.” Gibbons v. Gibbons, supra, 86 N.J. at 523, 432 A.2d 80; Schiavo v. John F. Kennedy Hosp., supra, 258 N.J.Super. at 385, 609 A.2d 781. In Carnegie Bank v. Shalleck, 256 N.J.Super. 23, 39-42, 606 A.2d 389 (App.Div.1992), the Appellate Division concluded that an amendment adding a definition of “a stated rate of interest” to the negotiable instruments title of the Uniform Commercial Code should be retroactively applied because the amendment was curative and furthered the-expectations of the parties. The new definition clarified the statute by providing that a variable rate of interest requiring reference to a source outside the instrument would not render the instrument nonnegotiable. That result was consistent with commercial practices and expectations because variable interest rate *357 mortgages had become widely accepted and developing technology made it readily possible to determine the sum due on a variable interest rate note. Ibid. On the other hand, in Brown v. State, Dep’t of Personnel, 257 N.J.Super. 84, 91-92, 607 A.2d 1354 (App.Div.1992), the court held that an amendment to the veteran’s preference statute expanding the definition of veteran for civil service purposes would not be applied to a Department of Personnel competitive list and examination that predated enactment of the amendment. The expectations of the parties at the time of the exam were fixed by the statutory scheme then in place. Quite clearly, neither the Division of Taxation nor a taxpayer could have had an expectation in the spring of 1989 that the Legislature would grant a right to full abatement of interest in the event of erroneous advice provided by the Division. The State Tax Uniform Procedure law, N.J.S.A 54:48-1 to :53 — 15, was enacted in 1936 (L.1936, c. 263) and from its inception had not permitted a complete abatement of interest.
In summary, the usual rule of prospective application of statutes applies in this case. Thus N.J.S.A 54:49-llb, which became operative on July 1, 1993, has no relevance to return instructions issued for the 1988 taxable year and relied upon no later than April 15, 1989. Since N.J.S.A. 54:49-llb does not apply in this case and since there is no other authority for abating interest on a state tax deficiency below 3% above prime, the Director’s assessment of interest at the statutory minimum is affirmed. Camden City v. Director, Div. of Taxation, 4 N.J.Tax 458, 469 (Tax 1982). There is no need to reach the question of whether the 1988 return instructions were erroneous. See, however, Widder v. Director, Div. of Taxation, 14 N.J.Tax 349 (Tax 1994).
The court will issue a judgment affirming the Director’s assessment of interest at 3% above prime.

 Since the statute specifies an effective date, there is no need to refer to NJ.S.A. 1:2-3, which provides that all acts go into effect on the July 1 next succeeding enactment unless otherwise provided in the act.

 In New Jersey, interest on judgments of the Superior Court is prescribed by court rule rather than statute. Busik v. Levine, 63 N.J. 351, 356, 307 A.2d 571, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) "[Tjhe usual rule [is] that judge-made law is retrospective.” Id., 63 N.J. at 360-61, 307 A.2d 571. In Busik, our Supreme Court thus held that the court rule authorizing prejudgment interest should be applied in a tort action where the accident in question occurred before the rule was first adopted.

 An example of an "unequivocal expression" of retroactive application is found in the statute that made technical corrections to the Taxpayer Bill of Rights. That statute, L. 1993, c. 331, states in § 6, "This act shall take effect immediately and sections 3, 4 and 5 shall be retroactive to July 1, 1993 if enacted after that date." Chapter 331 was enacted on December 23, 1993.

 A distinction must be drawn between the operative date of each provision— either January 1 or July 1, 1993 under section 44 or 42 of the act — and the operative conduct that must occur on or after the operative date. Thus, for instance, the operative conduct that triggers a potential award of litigation costs includes "determinations, collections, refund applications, and assessments of *354 penalties and interest." N.J.S.A. 54:48-7d; N.J.S.A. 54:51A-22. The operative date for the occurrence of such determinations, etc., is July 1, 1993. N.J.S.A. 54:48-7d.

 As made clear by Magnolia Petroleum Co., supra, involving the federal government’s liability for interest on a tax refund, and to some extent by Kendall v. Snedeker, 219 N.J.Super. 283, 530 A.2d 334 (App.Div.1987), involving recoveries from the Unsatisfied Claim and Judgment Fund, the fact that government monies are at stake does not, standing alone, suggest that a statutory amendment should be retroactively applied.

 There is no need to decide in this case whether the relevant conduct that N.J.S.A. 54:49~llb regulates is the issuance of erroneous advice or the taxpayer’s reliance on that advice. It is conceivable that the erroneous advice, e.g., a private ruling, could be issued prior to July 1, 1993, while the taxpayer's reasonable reliance on the advice, e.g., in the preparation of a return for the 1994 taxable year, could occur after July 1, 1993.