The opinion of the Court was delivered by
KIMMELMAN, J.A.D.
Before the court are nine consolidated appeals and cross-appeals. Plaintiff Bellemead Development Corp., (Bellemead), which is a named-party plaintiff in each of the appeals, owns all of the land in an office park in Roseland known as 280 Corporate Park. There are nine large office buildings on nine parcels which are contiguous except for interim roads. One parcel is not improved. The nine buildings are owned by nine separate entities as follows: 4 Becker Associates, 75 Livingston Associates, 7 Becker Farm Associates, 5 Becker Associates, 280 Corp., Seton Hall University, 85 Livingston Associates, Livingston I Associates, and 6 Becker Associates. All of the entities, including Bellemead but excepting 4 Becker Associates, are plaintiffs-appellants herein. Bellemead, as the exclusive managing agent for each of the nine entities, is the taxpayer of record for each of the properties. Bellemead, acting for itself as the owner of the land and for each of the nine separately named entities as owners of the improvements (altogether ten separate tax entities which includes 4 Becker Associates), filed tax assessment appeals for the years 1991 (covering seven of the properties), 1992 and 1998 (covering the unimproved parcel and all nine building properties), and 1994 and 1995 (covering eight of the building properties). It is significant to these *20 appeals that all of the plaintiffs, including 4 Becker Associates, were represented in the underlying tax appeals by the same counsel. As will be later emphasized, said counsel acted at all times within the scope of his authority. On July 20, 1993, after extensive negotiations with counsel for Roseland, counsel for and on behalf of all ten taxpayers agreed to a global settlement of the 1991 and 1992 tax assessments; the tax appeals pending for the same properties for 1993; and the assessments for the years 1994 and 1995, in accordance with the applicable provisions of the Freeze Act, N.J.S.A. 54:51A-8. On July 21,1993, the judge of the Tax Court handling the appeals was advised by each counsel separately that all of the tax appeals had been settled. The eases were marked “settled” and counsel were requested to prepare and submit stipulations of settlement.
On July 23, 1993, after the first tax appeal had been scheduled for trial, counsel for all of the taxpayers reported to Roseland’s counsel that Bellemead was revoking its consent to the global settlement, because there was objection by one of the nonparty tenants which was responsible for paying a portion of the taxes on the 4 Becker Farm Road property. Nonetheless, the Borough Council, which had already given its consent, met on July 27,1993, and formally adopted a resolution confirming the global settlement.
The Tax Court rejected Roseland’s motion to enforce the global settlement on August 20, 1993. On September 24,1993, this court denied defendant’s application for leave to file an interlocutory appeal. Thereafter, the tax appeals for the years 1991 and 1992, involving only Bellemead and 4 Becker Associates, went to trial. Both the Tax Court judge and counsel for Roseland referred to the trial as a test case, and plaintiffs’ counsel did not object to that characterization.
On April 20, 1994, after a hearing, the Tax Court entered' a judgment affecting only 4 Becker Associates. The decision ordered a new assessment of the property, which resulted in a substantial reduction from the settlement amounts agreed for the years 1991 and 1992. Roseland lodged an appeal. In the case *21 information statement, as part of the notice of appeal, Roseland succinctly explained the procedural history and facts of the case as follows:
Plaintiff-Respondent sought direct review in the Tax Court of its 1991 and 1992 tax assessments on one office building in Roseland. The parties reached a settlement in this matter as well as in nine other Tax Court eases listed as 1-10 on Exhibit I annexed but Plaintiff-Respondent subsequently “revoked” this settlement. Defendant-Appellant filed a Motion to enforce the settlements which was denied by the Tax Court on August 20, 1993 (See Exhibit III annexed) and the Appellate Division denied our Motion on September 24, 1993 for leave to appeal (Docket AM-32-93T1, Motion No. M-240-93). The case under appeal herein was then tried to conclusion with the balance of cases (2-10) scheduled for Case Management Conference on June 3,1994. (See Exhibit II annexed)
In Schedule A to its case information statement, defendant wrote:
The facts and legal issues relating to the settlements were the same in all ten cases, yet only this one ease is on appeal before the Appellate Division and nine eases are still pending in the Tax Court and nearing trial. A prompt review of the Tax Court’s order on the settlements may result in a reversal, thereby obviating the need to conduct nine separate trials on value.
On June 23, 1995, this court reversed the April 20, 1994, Tax Court judgment. It was ruled not only that appellants Bellemead and 4 Becker Associates had settled, but that the settlement covered the assessments on the nine other properties as well. Pertinent portions of our prior opinion bear repeating:
Roseland appeals from the denial of its motion and the judgment. Roseland contends that (1) a settlement was reached and should be enforced by the court, and (2) the judge’s decision after trial is not supported by the record and contains reversible errors as to valuation.
After careful consideration of the record, we conclude that the parties settled the case. We therefore reverse.
The pertinent and essentially undisputed facts can be summarized as follows. Trial was scheduled for July 23, 1993. On July 12, 1993, the attorney for plaintiffs advised the attorney for Roseland that he was authorized to make a specific proposal to Roseland to settle all of the docketed eases. The terms of the proposal were reviewed at length by - both attorneys. On July 13, 1993, the Roseland Borough Council authorized Roseland’s attorney to conclude the settlement.
Further telephone conferences took place among the attorneys on July 14, 1993. On July 20,1993, the attorneys met and concluded the settlement.
The settlement covered not only the 1991-92 tax assessments on the ten properties, but also tax appeals pending for the same properties for 1993. The settlement also resolved the applicability of the Freeze Act, N.J.S.A. 54:51A-8, for most of the properties for 1994 and 1995.
*22 On July 21, 1993, the attorney for Roseland and the attorney for plaintiffs separately called the law clerk of the Tax Court judge and advised the law clerk that the cases were settled. The law clerk said that all the cases would be marked “settled” and requested that the attorneys prepare stipulations of settlement.
On July 21 and July 22, 1993, the attorneys conferred further by telephone regarding the settlement documents. The attorney for Roseland asserts that-at no time was there any doubt about the terms of the settlement. The attorney for Roseland asserts that in view of the magnitude of the assessments and the financial impact upon the municipality, he had reviewed the terms' of the settlement repeatedly with the plaintiffs’ attorney and had made certain that (1) nothing had been left out; (2) all of .the new assessments and other terms'of the settlement had been agreed upon; and (3) there had been a complete meeting of the minds between the parties.
On the morning of July 23, 1993, the attorney for plaintiffs called the attorney for Roseland and stated that plaintiffs were withdrawing from the settlement. At oral argument, we were told that the reasons for plaintiffs’ change of mind was that a tenant of plaintiffs, who was paying fifty percent of the taxes, had' objected to the settlement. The tenant was not a party to the litigation.
Plaintiffs argue that they withdrew the settlement “offer” before it was accepted by the municipality. The facts indicate otherwise. Counsel for Roseland met with the Roseland Borough Council on July 13, 1993, and reviewed in detail rath them the terms of the settlement. The Roseland Borough Council concurred in the settlement. Only thereafter did plaintiffs attempt to withdraw from the settlement. ,
Plaintiffs do not contend that the settlement is unfair or inequitable or that any fraud or mistake is involved. Plaintiffs should not be allowed to repudiate, or as the attorney for Roseland said at oral argument, “welsh,” on a settlement merely because plaintiffs want to appease someone with whom they have a business interest.
The settlement here is in the best interests of the parties and the public. The settlement covers not only the assessment litigated but also assessments on nine other properties. The assessments for a number of tax years are resolved. The public and private interests concerned are ill served by setting aside the settlement and therefore continuing this complex litigation with nine more cases to be tried.
We are satisfied from a thorough review of the record that (1) a settlement was reached; (2) there was no significant disagreement as to its terms; and (3) enforcement of the settlement is in the public interest and is fair to the litigants.
We reverse the denial of the motion to enforce the settlement and the entry of the judgment. We remand to the Tax Court for enforcement of the settlement in accordance with this opinion.
[ (Citations omitted).]
In the 4 Becker Associates matter, plaintiffs moved to supplement the record and for reconsideration on the ground that this court lacked jurisdiction to rule in all ten matters, because all ten *23 properties were not before the court. Both motions were denied. Plaintiffs’ petition for certification was likewise denied.
On remand to the Tax Court, Roseland, using the “Bellemead— 4 Becker Associates” caption, moved for the entry of final judgment in all of the eases. The moving documents specifically listed the Tax Court docket numbers for all ten properties. At oral argument on Roseland’s motion to enforce the settlement affecting the ten properties, counsel representing Bellemead stated on the record that he appeared “on behalf of all the other plaintiffs with respect to the proposed entry of judgments.” The order for judgment entered January 16, 1996, is also captioned in the “Bellemead — 4 Becker Associates” matter, but lists the Tax Court docket numbers for the tax appeals involving all ten properties. The Tax Court judgment confirmed the global settlement of the assessments. Plaintiffs’ motion for reconsideration in the Tax Court and Roseland’s motion for counsel fees, costs, and sanctions were denied on March 12,1996.
On April 12, 1996, Bellemead, and each of the nine property entities, other than 4 Becker Associates, filed nine separate appeals from the Tax Court’s order for judgment of January 16, 1996, and order of March 12, 1996. Roseland filed cross-appeals in all nine cases, contesting the denial of its application for counsel fees, costs, and sanctions. As indicated, all nine appeals and cross-appeals have been consolidated. Plaintiffs raise the following arguments in their consolidated brief:
Point 1
The Tax Court’s Order Entering Final Judgments in the Cases Now on Appeal Violated Fundamental Procedural Due Process Rights of the Taxpayer-Plaintiffs Who Were not Parties to the 4 Becker Farm Road Case or to the Appeal in that Case.
Point II
The Tax Court Erred as a Matter of Law m Not Interpreting the Appellate Division’s Statements Concerning Properties and Parties Not on Appeal as Nonbinding Dicta.
Point III
The Tax Court Erred in Denying the Taxpayer-Plaintiffs an Opportunity to Conduct Discovery With Respect to the Precise Terms of the Parties’ Alleged Settlement Which Was to be Enforced.
*24 We need only address plaintiffs’ assertion that the final judgment entered by the Tax Court on January 16, 1996, confirming and enforcing the global settlement, violated them fundamental procedural due process rights, because they were not parties to the 4 Becker Associates case in either the trial court or this court.
The nine separate property owners, along with 4 Becker Associates, contend that they are not in privity with each other. In the context of the global settlement of the tax appeals and in both the prior and subsequent proceedings, including the previous appeal to this court, the facts show otherwise. Plaintiff-appellant Bellemead owns the real estate underlying the multi-story office complexes which are owned by each of the nine separate entities. Bellemead was the exclusive managing agent for each of the nine entities and in that capacity was taxpayer of record for each. Bellemead, acting within its authority, initiated and filed the tax appeals which eventually resulted in the global settlement. The tax appeals involving the ten properties were filed in the name of Bellemead, together with the name of each of the nine separate entities. The entities, along with Bellemead, had but one counsel who represented them throughout the initial filings, the settlement negotiations, the trial of the test case, and the subsequent appeal to this court. And in point of fact, it was that counsel who advised the Tax Court on July 21, 1993, that all ten tax appeals had been settled.
To be sure, the nine separate entities who are appellants herein seek to divorce themselves from the global settlement announced to the Tax Court by them counsel, but to this very date there has not been furnished to this court, either as part of the original record or in the permitted supplements to the record, one single affidavit or certification by a responsible party that such counsel was not authorized to represent them, or that he acted beyond the scope of his authority in effecting the global settlement on their behalf. The fact that some non-party tenants who must bear a portion of the real estate taxes under them leases think they can do better by litigating the assessments levied by Roseland is a *25 specious reason for the attempted revocation of the global settlement.
The Tax Court, upon rendering the judgment now under appeal, made this finding:
First of all, the Court is satisfied from the copious certifications and exhibits that were submitted in response to plaintiffs’ instant motions that there was indeed a settlement of all ten properties. The terms were exclusively defined and there could be no question in anybody’s mind about what they were.
We regard such finding by the Tax Court judge to be supported by the record and determinative of this appeal. Implicit within it is the further finding that counsel for Bellemead and for each of the nine entities acted within the scope of his authority and with the authorization of his clients. Further implicit within such finding is that the settlements were complete on them face. No suggestion has been made that the global settlement or any segment thereof is unfair, inequitable, or the result of mistake or fraud. See Herrera v. Township of South Orange, 270 N.J.Super. 417, 424, 637 A.2d 526 (App.Div.1993), certif. denied, 136 N.J. 28, 641 A.2d 1039 (1994); Pascarella v. Bruck, 190 N.J.Super. 118, 124, 462 A.2d 186 (App.Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983) (quoting Honeywell v. Bubb, 130 N.J.Super. 130, 136, 325 A.2d 832 (App.Div.1974)). Accordingly, appellants’ argument that the settlements in question were nothing more than “purported” settlements must fail.
It is abundantly clear from all of the legal mechanics leading to this appeal that there was a tacit understanding amongst Belle-mead and the nine entities, acting through their counsel, that the outcome of the 4 Becker Associates’ appeal would be the guide for all. There was, and is, no legal or legitimate way to separate one segment of the global settlement from another. The circumstances here presented demand that a consistent result be reached. To do otherwise would run counter to public policy by sanctioning the unmaking of settlements. See e.g., Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990); Judson v. Peoples Bank and Trust Co., 25 N.J. 17, 35, 134 A.2d 761 (1957); In re Petition of P.S.E. & G., 304 N.J.Super. 247, 259, 699 A.2d 1224 (App.Div.), certif. denied, 152 N.J. 12, 702 A.2d 351 (1997).
*26 With respect to Roseland’s cross-claims for counsel fees, costs, and sanctions, we are satisfied to abide by the ruling of Judge Crabtree denying the same. R. 2:ll-3(e)(l)(A).
Based upon the foregoing analysis, the January 16, 1996, judgment of the Tax Court is affirmed.