KAHN, J.T.C.
This is the court’s decision with respect to plaintiff, Regent Care Center, Inc.’s (“taxpayer’s”) motion for reconsideration of this court’s opinion delivered on April 30, 2001. Regent Care Center, Inc. v. Hackensack City, 19 N.J.Tax 455 (2001). The underlying complaint alleged that property located at 50 Polifly Road, Hackensack, New Jersey (a nursing home), was subject to an unconstitutional spot assessment for the 1997 tax year. More specifically, taxpayer alleged that the process of reassessing certain property on an annual basis, absent the formal guidelines associated with an official reassessment or revaluation, constitutes an unconstitutional spot assessment.
In a written opinion dated April 30, 2001, this court affirmed the assessment, holding:
Property tax assessments may be revised without a complete revaluation or reassessment. See Corrado [v. Tp. of Montclair, 18 N.J.Tax 200] supra, at 202, citing [Tp. of West Milford v.] Van Decker, [120 N.J. 354] at 362, 576 A.2d 881 (underscoring that a municipality may revise assessments even if it is not a revaluation year). In fact, N'J.S.A 54:4-23 imposes a duty on tax assessors to assess property annually, and to employ their judgment to determine full and fair value. In sum, because the tax assessor was merely complying with a statutory mandate, and the property was not reassessed solely because it was sold, this court finds that said assessment is not an unconstitutional spot assessment and should therefore be enforced.
[Regent Care Center, Inc. v. Hackensack City, 19 N.J.Tax 455 (2001)]
Plaintiff subsequently moved for reconsideration on eight different grounds. The standards for reconsideration are substantially harder to meet than are those for a reversal of a judgment on appeal. See Dantzler v. Director, 18 N.J.Tax 507, 508 (1999). *185 A litigant should not seek reconsideration merely because he is dissatisfied with the decision of the court. See D’Atria v. D'Atria, 242 N.J.Super. 392, 401, 576 A.2d 957 (Ch.Div.1990). Rather, it is reserved for those cases where (1) the court has expressed its decision based upon a palpably incorrect or irrational basis; or (2) it is obvious that the court did not consider, or failed to appreciate the significance of probative, competent evidence. Ibid. In essence, plaintiff must initially show that the court acted in an arbitrary, capricious or unreasonable manner. Ibid. “Although it is an overstatement to say that a decision is not arbitrary, capricious, or unreasonable whenever a court can review the reasons stated for the decision without a loud guffaw or involuntary gasp, it is not much of an overstatement.” Ibid.
In the present case, plaintiffs motion for reconsideration requested that this court: (1) amend footnote I to include a more in depth discussion of this court’s disposition of the years not before the court; (2) articulate its reasons for rejecting the municipality’s argument alleging that plaintiffs case was time barred; (3) supplement its findings to include a more in depth discussion of the assessor’s testimony during cross examination; (4) engage in a more in depth discussion of Tp. of West Milford, v. VanDecker, 120 N.J. 354, 576 A.2d 881 (1990), specifically, the implications of its disagreement with Quinn v. City of Jersey City, 9 N.J.Tax 128 (1987); (5) give further consideration to the out of state case law cited by plaintiff in its post trial brief; (6) declare N.J.S.A 54:4-23, unconstitutional as violative of the Administrative Procedure Act; (7) declare N.J.S.A. 54:4-23, as amended by L. 2001, c. 101, unconstitutional because it permits assessment maintenance; and (8) consider Bill A-2947, signed into law on June 14, 2001, which amended N.J.S.A 54:4-23.
Oral argument was heard on these issues on June 22, 2001. At that time, this court reserved decision on the applicability of plaintiffs seventh and eighth grounds for reconsideration, the June 14, 2001 amendment to N.J.S.A 54:4-23, while denying reconsideration on the other six grounds. With regard to the first five of those arguments, this court adds nothing to its previous *186 written decision, Regent Care Center, Inc. v. Hackensack City, 19 N.J.Tax 455 (2001), and its opinion and decision delivered from the bench on June 22, 2001.
This court also declined to consider, at oral argument and declines at this time, plaintiffs sixth point, calling into question the constitutionality of N.J.S.A 54:4-23 before it was amended. The trial judge is typically given discretion to abstain from hearing arguments for the first time, that were simply overlooked at trial by the moving party. See Morey v. Bor. of Wildwood Crest, 18 N.J.Tax 335, 341 (App.Div.1999). There, the Appellate Division observed:
Generally, counsel should use reconsideration motions to acquaint the court with controlling decisions counsel believes the court has overlooked or on which it has erred. R. 1:7 — 4(b). When new information is provided on reconsideration, the court generally will hear this information when the new or additional information could not have been provided on the first application.
[.Ibid1]
The plaintiff in the present case did not call into question the constitutionality of N.J.S.A. 54:4-23 during trial, or in its post trial brief. In fact, plaintiffs post trial brief does not mention N.J.S.A. 54:4-23. Rather, plaintiffs brief characterizes the principal issue to be “whether or not the increase of the assessments of the subject property was an unconstitutional spot assessment.” Alleging that a particular assessment operates as an unconstitutional spot assessment, and alleging that the statute authorizing assessments is unconstitutional are two very distinct arguments. Thus, because this argument could have been, and should have been made at the time of trial, this court declines to hear it for the first time on reconsideration.
This court also declines to consider plaintiffs seventh ground for reconsideration, which alleges that N.J.S.A. 54:4-23 as amended is unconstitutional. In light of the determination discussed hereunder regarding retroactivity, it is unnecessary at this time to consider plaintiffs seventh argument.
Thus, the only issue currently before this court is plaintiffs eighth ground for reconsideration regarding whether the June 14, *187 2001 amendment to N.J.S.A 54:4-23 is applicable to the present case. More specifically, whether the assessor was required to submit a “compliance plan” as is dictated by those amendments.
For the reasons discussed hereunder, this court holds that N.J.S.A. 54:4-23, as amended by L. 2001, c. 101, should be applied prospectively, and therefore, is not inapplicable to the disposition of the present case.
Before the June 14, 2001 amendment, that statute stated in pertinent part:
All real property shall be assessed to the person owning the property on October 1 in each year. The assessor shall ... determine full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract ....
[N.J.S.A. 54:4-23]
The following language was inserted by the June 14, 2001 amendment:
[A]nd provided further however, that when the assessor has reason to believe that property comprising all or part of a taxing district has been assessed at a value lower or higher than is consistent with the purpose of securing uniform taxable valuation of property according to law for the purpose of taxation, or that the assessment of property comprising all or part of a taxing district is not in substantial compliance with the law and that the interests of the public will be promoted by a reassessment of such property, the assessor shall, after due investigation, make a reassessment of the property in the taxing district that is not in substantial compliance, provided that (1) the assessor has first notified, in writing, the mayor, the municipal governing body, the Division of Taxation in the Department of the Treasury, the county board of taxation, and the county tax administrator of the basis of the assessor’s determination that a reassessment of that property in the taxing district is warranted and (2) the assessor has submitted a copy of a compliance plan to the county board of taxation and to the Division of Taxation for approval. If the assessor does not receive an approval decision or a decision disapproving the plan from either the county board of taxation or the Division of Taxation within 45 days of their receipt of the compliance plan, then the entity that did not respond shall be deemed to have approved the plan. Following a reassessment of a portion of the taxing district pursuant to an approved compliance plan, the assessor shall certify to the county board of taxation, through such sampling as the county board of taxation deems adequate, that the reassessment is in substantial compliance with the portions of the taxing district that were not reassessed____
[N.J.S.A. 54:4-23 as amended by L. 2001, c. 101]
The issue before this court is whether it should apply N.J.S.A. 54:4-23 as it was at the time of this court’s decision or as *188 it was at the time of the conduct in question. There are two competing interests. First, as a general proposition, the courts of this state have long preferred a rule of statutory construction which favors prospective application of statutes. See Phillips v. Curiale, 128 N.J. 608, 615, 608 A.2d 895 (1992). When a new law is applied prospectively, it will only govern causes of action which arise after its effective date. This rule is favored because the courts of this State have recognized the high potential of injustice which may occur when a new law is applied retroactively. See Gibbons v. Gibbons, 86 N.J. 515, 522, 432 A.2d 80 (1981). The competing doctrine is commonly referred to as the time-of-decision rule. See Richardson v. Director, Div. of Taxation, 14 N.J.Tax 356, 362 (1994). Under this rule, all cases pending on the effective date of a statutory amendment are controlled by that change.
The United States Supreme Court reiterated its preference for prospective application of statutory amendments in Landgraf v. USI Film Products, 511 U.S. 244, 273, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994), (confirming that there remains “a presumption against statutory retroactivity.”) This court has adopted the presumption discussed in Landgraf, supra, 511 U.S. at 273, 114 S.Ct. at 1501, 128 L.Ed.2d 229. See Richardson, supra, 14 N.J.Tax at 365. While this presumption is considered a sound rule of statutory interpretation, both the Supreme Court and the courts of this State have recognized that it “is no more than a rule of statutory interpretation,” and is not to be applied routinely in defeating a retroactive application of a statute. See Gibbons, supra, 86 N.J. at 522, 432 A.2d 80, quoting Rothman v. Rothman, 65 N.J. 219, 224, 320 A.2d 496 (1974). Thus, this court will apply the amendment to N.J.S.A. 54:4-23, made by L. 2001, c. 101, prospectively unless one of the well defined exceptions discussed below applies. If so, the court will apply the statute in effect at the time of its decision.
In light of these considerations, L. 2001, c. 101 will be applied prospectively unless one of the following exceptions apply: (1) the Legislature either expressly or impliedly expressed a desire for retroactivity; (2) the amendment is curative; (3) the *189 amendment is ameliorative; or (4) the expectations of the parties warrant the retroactive application of the statute. See Gibbons, supra 86 N.J. at 522-23, 432 A.2d 80.
The first question this court must resolve is whether the Legislature either expressly or impliedly expressed a desire for L. 2001, c. 101 to be applied retroactively. Express legislative intent can be found in either the language of the statute or in its pertinent legislative history. Ibid. The Richardson court noted the following as an example of unequivocal express intent: “This act shall take effect immediately and sections 3, 4, and 5 shall be retroactive to July 1, 1993 if enacted after that date.”[1] See Richardson, supra, 14 N.J.Tax at 367.
L. 2001, c. 101 does not specifically articulate that it should apply retroactively. Rather, it simply states: “This act shall take effect immediately.” This statement, alone, is insufficient for this court to find express intent regarding retroactivity. Id. at 366, quoting Phillips, supra, 128 N.J. at 617, 608 A.2d 895 (“the omission is not an ‘unequivocal expression’ to give the section retroactive application”). Moreover, there is no reference to retroactivity in the legislative history. Thus, this court finds that the Legislature did not expressly require L. 2001, c. 101, amending N.J.S.A. 54:4-23, to be applied retroactively.
Next, this court must determine whether the nature of the legislative scheme implies that the Legislature intended that this statute apply retroactively. Generally, implied intent may only be found where retroactivity is necessary to make the statute workable or to give it its most sensible interpretation. See Gibbons, supra, 86 N.J. at 522, 432 A.2d 80, citing Hohl v. Tp. of Readington, 37 N.J. 271, 279, 181 A.2d 150 (1962). This will typically occur in instances where the statute does not truly operate in a retroactive fashion. See Richardson, supra, 14 N.J. Tax at 364. Such is the case for statutes regulating injunctive *190 relief, jurisdiction, and general rules of procedure. Ibid. On the other hand, such intent will not be found in a “statute that changes the settled law and is related to substantive rights . . . .” See Phillips, supra, 128 N.J. at 617, 608 A.2d 895. Thus, in order to determine whether the “implied intent” exception applies, this court must first determine whether the amendments to N.J.S.A. 54:4-23 were procedural or substantive.
In Richardson, this court declined to apply a statute retroactively that gave taxpayers the right to a complete abatement if the taxpayer reasonably relied on erroneous advice from the Division of Taxation regarding Gross Income Tax. See Richardson, supra. There, taxpayer received a deficiency notice in March 1992 after relying on the Director’s allegedly erroneous advice in filing its return for the 1988 tax year. Id. at 358. In response, taxpayer filed a claim against the Director, arguing that the provisions of N.J.S.A. 54:49-11, signed into law in December 1992, entitled him to an abatement. Ibid. The court refused to retroactively apply the statute because it attached new legal consequences to events completed four years before its enactment. Id. at 368. It explained that retroactive application would be unfair because the Division had no way of knowing that any erroneous advice contained in the 1988 return instructions would entitle taxpayer to an abatement at that time, nor did taxpayer have any expectation of such. Ibid. Retroactivity would “change the rules and expectations under which both government employees and taxpayers operated [at the time of the event].” Ibid.
In the present case, the assessor undertook his duties as prescribed by N.J.S.A. 54:4-23 which, in its pre-amended form, required him to use his judgment to reassess properties on October 1 of the pre-tax year, which, in this case was October 1, 1996. Nowhere in the statute was there a requirement mandating that it be pursuant to a written plan or any other formal guidelines. Moreover, it was at that time, and still is, the common practice of assessors to make assessments in such a manner. Similar to the facts before the court in Richardson, as of October 1, 1996, the assessor had no way of knowing that failure to submit *191 a formal plan to the governing body before updating an assessment would violate an as yet unwritten statute. Moreover, there was no reasonable expectation by the taxpayer that the assessor had to obtain prior approval.[2] In sum, there is no implied intent because L. 2001, c. 101 changed settled law and created an additional substantive right.
N.J.S.A. 54:4-23, as amended, can also be applied retroactively if it falls into the “curative” exception. Under this exception, an amendment may be applied retroactively if it was intended to carry out or explain the intent of the original statute by remedying a perceived imperfection in or a misapplication of a statute. See Kendall v. Snedeker, 219 N.J.Super. 283, 287-90, 530 A.2d 334 (App.Div.1987). The intended effect of a curative amendment is to bring law into harmony with what the Legislature intended. See Sarasota-Coolidge Equities II, L.L.C. v. S. Rotondi & Sons, Inc., 339 N.J.Super. 105, 114-115, 770 A.2d 1264 (App.Div.2001), quoting Kendall, supra, 219 N.J.Super. at 287, 530 A.2d 334. It is, however, only used to clarify the original intent, not alter the intended scope or purpose of the original act. See Kendall, supra, 219 N.J.Super. at 288, 530 A.2d 334. Moreover, the curative exception cannot be applied “merely because an amendment is deemed to better a statutory scheme.” Id. at 289, 530 A.2d 334.
The Appellate Division invoked the curative exception to retroactively apply a U.C.C. amendment which added the definition of “a stated rate of interest” to one of its sections. See Carnegie Bank v. Shalleck, 256 N.J.Super. 23, 42, 606 A.2d 389 (App.Div.1992). The court deemed the amendment curative because it was consistent with commercial practices and expectations as the definition had become widely accepted in the field. Ibid.
The present amendment changes N.J.S.A. 54:4-23 in that it places additional burdens on the assessor during the assessment process. Thus, similar to the amendments in Richardson, this *192 amendment falls outside the scope of the curative exception because it does more than correct an error or effectuate the original intent of the Legislature. Rather, it requires actions that were neither previously contemplated by the Legislature, nor reflected in the actual assessment process. As previously discussed, the assessor had no way of knowing on October 1, 1996 that he would be required to assess property pursuant to a formal plan, a requirement that was enacted more than four years before performance of his statutory duties. In sum, because this amendment is substantive in nature, as it changes the current statutory scheme, it cannot be applied retroactively.
Nor can it be applied retroactively under the ameliorative exception. That exception only applies in criminal law, where the purpose of the statute is to impose a lesser punishment. See Fasching v. Kallinger, 227 N.J.Super. 270, 274, 546 A.2d 1094 (App.Div.1988). The present amendment does not relate to such considerations.
The final exception to prospective only application of a statute is a general catchall category which allows retroactivity where it fulfills the expectations of the parties. See Gibbons, supra, 86 N.J. at 523, 432 A.2d 80. As mentioned earlier, there is no way that, as of October 1,1996, either party expected that the assessor would be required to assess property pursuant to a plan. The statute did not require any type of plan, it was not the common practice of assessors to do so, and the applicable case law justified that practice.
In sum, N.J.S.A. 54:4-23, as amended by L. 2001, c. 101 must be applied prospectively because the current amendment does not fall into any of the aforementioned exceptions. As a result, taxpayer’s motion for reconsideration is denied.
In opposition, taxpayer relies on N.J.S.A 1:1-14 and the New Jersey Supreme Court’s holding in Klebanow v. Glaser, 80 N.J. 367, 403 A.2d 897 (1979), where the court applied the Tax on Capital Gains and Other Unearned Income Act retroactively. This case is distinguishable from the case at bar for several *193 reasons. First, the statute, by its own terms, was expressly made retroactive to January l.[3] Second, the court underscored the fact that the bill was enacted in an attempt to rescue the State from a “financial crunch.” Id. at 376-77, 403 A.2d 897. Third, there was substantial evidence which indicated that the taxpayer in that case either knew or should have known that the legislation was pending.[4] Id. at 377, 403 A.2d 897.
Taxpayer also relies on N.J.S.A. 1:1-14, which states in pertinent part:
No action, proceeding or matter of any kind ... shall be abated or discontinued because of such repeal; but the same may and shall be prosecuted to final judgment, decree or decision in accordance with the practice and procedure in force at the time when such action or proceeding was begun, except that where the course of practice or procedure for the enforcement of a right, or the prosecution of a suit, shall be changed, actions now pending, or hereafter begun shall be conducted as near as may be in accordance with such altered practice or procedure.
Plaintiff asserts that the statute’s exception stands for the principle that “where a statute is changed and a matter is pending, the new statute applies.” This, interpretation, is incorrect. The exception only refers to practice or procedure concerning the conduct of the suit, not practice or procedure which directly affects a right the statute was intended to protect. See Barnaby v. Bradley & Currier Co., 60 N.J.L. 158, 37 A. 764 (E & A 1897). As previously discussed, L. 2001, c. 101 affects a substantive, rather than a procedural, change in the law. As a result, the aforementioned statutory exception does not apply in the case.
*194 This court finds that L. 2001, c. 101, which amended N.J.S.A. 54:4-23, should only be applied prospectively. Thus, the present case must be decided pursuant to law as it existed when the assessment occurred.

CONCLUSION

For the reasons discussed herein, those discussed in this court’s prior opinion, Regent Care Center, Inc. v. Hackensack City, 19 N.J.Tax 455 (2001), and those expressed in the June 22, 2001 oral opinion, this court denies plaintiffs motion for reconsideration.

 This example was an excerpt from the statute that made technical corrections to the Taxpayer Bill of Rights.

 Unlike the facts present in Klebanow v. Glaser, 80 N.J. 367, 403 A.2d 897 (1979), no such legislation was being considered as of October 1, 1996.

 The act, which was signed into law on August 4, 1975, specifically provided it was to "take effect immediately and shall be applicable with respect to unearned income earned, teceived, or constructively accrued or credited to the taxpayer on or alter January 1, 1975." See L. 1975, c. 172, § 25.

 “We agree with the Appellate Division that under the situation then existent the plaintiff should have been aware that serious consideration was being given to some form of income tax long before the sale of the stock. One observer, after reviewing some of the many bills introduced in the Legislature, commented that: 'Clearly, New Jersey taxpayers were given more than reasonable notice as to the potential for a tax on capital gains long prior to [sic] January 1, 1975, effective date of the Act.... ’ " See Klebanow, supra, 80 N.J. at 377, 403 A.2d 897 [citations omitted].