219 N.J. Super. 283 (1987)
530 A.2d 334
DAVID KENDALL, PLAINTIFF-APPELLANT,
v.
CLIFFORD SNEDEKER, DIRECTOR OF THE DIV. OF MOTOR VEHICLES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 24, 1987.
Decided July 20, 1987.
*284 Before Judges BRODY and LONG.
Martin, Crawshaw & Mayfield, for appellant (Bruce M. Gunn, on the brief).
Clark, Gertler & Hanna, for respondent (Mark S. Hochman, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
On August 12, 1982, plaintiff David Kendall was a passenger in an uninsured motor vehicle owned and driven by his wife, Louise. The automobile was involved in an accident in which Kendall sustained serious injuries. He filed a complaint against defendant, Clifford Snedeker, the Director of the New Jersey Division of Motor Vehicles, seeking to recover damages from the Unsatisfied Claim and Judgment Fund (the Fund), N.J.S.A. 39:6-60 et seq. Defendant contested Kendall's entitlement to Fund benefits and moved for summary judgment.
At the time of the accident in 1982, N.J.S.A. 39:6-70(d) required that a person seeking to recover benefits from the Fund establish that "[h]e was not at the time of the accident operating or riding in an uninsured motor vehicle owned by him or his spouse ..." N.J.S.A. 39:6-70(d) (emphasis added). The same prohibition applied to the recovery of Personal Injury Protection (PIP) benefits. N.J.S.A. 39:6-86.1. N.J.S.A. 39:6-70(d) was amended effective October 4, 1983, to require that a person seeking to recover from the Fund establish only that *285 "[h]e was not at the time of the accident the owner or registrant of an uninsured motor vehicle ..." An identical change was made in N.J.S.A. 39:6-86.1, thus eliminating from the recovery scheme the interspousal bar which previously existed. Here, the parties conceded for the purposes of the summary judgment motion that under the pre-1983 law, Kendall was precluded from recovering from the Fund but that under the later amendment he would have been eligible to receive such benefits. The sole issue at the summary judgment motion was whether N.J.S.A. 39:6-70(d) and N.J.S.A. 39:6-86.1 should be applied retroactively. The trial judge thought not. We agree with him and affirm.
It is well-settled that generally statutes are to be applied prospectively. Gibbons v. Gibbons, 86 N.J. 515, 521 (1981); Skulski v. Nolan, 68 N.J. 179, 202 (1975); Commun. Workers v. Pub. Emp. Rel. Com'n., 193 N.J. Super. 658, 663-664 (App. Div. 1984). The rationale supporting a general rule of prospectivity was noted in Gibbons, supra:
It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair. There is general consensus among all people that notice or warning of the rules that are to be applied to determine their affairs should be given in advance of the actions whose effects are to be judged by them. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible as to law which has not been made. (2 Sutherland, Statutory Construction, § 41.02 at 247 (4th ed. 1973). [86 N.J. at 522 (citations omitted)]
According to Gibbons this rule of statutory construction is subject to several exceptions: where the Legislature has declared a contrary intent either expressly or impliedly, where the statute is ameliorative or curative and where the expectations of the parties may warrant retroactive application. 86 N.J. at 522-523.
Kendall claims that the amendment to N.J.S.A. 39:6-70(d) is "ameliorative or curative" and is therefore subject to retroactive application. Any assessment of this argument must begin with an analysis of the so-called ameliorative or curative exception. *286 We begin with the observation that ameliorative and curative are not synonymous terms and that they do not constitute one exception to the rule of prospectivity but two.
The ameliorative exception first appeared in New Jersey in the case of In re Smigelski, 30 N.J. 513, 527 (1959), in which the Supreme Court held that a statutory amendment restricting a juvenile's possible exposure to commitment was ameliorative and thus could be applied retroactively. For this proposition, the court cited People v. Oliver, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197 (Ct.App. 1956) which states:
[W]here an ameliorative statute takes the form of a reduction of punishment for a particular crime, the law is settled that the lesser penalty may be meted out in all cases decided after the effective date of the enactment, even though the underlying act may have been committed before that date.
* * * * * * * *
A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts. [Oliver, supra, 151 N.Y.S.2d at 373, 134 N.E.2d at 201-202]
Our research has revealed that the Oliver decision was the first to use the term ameliorative in the retroactivity context. Oliver cited 1 Wharton, Criminal Law § 42 (12th ed. 1932) and 1 Sutherland, Statutory Construction § 2048 (3rd ed. 1943) for the ameliorative principle although both texts use the term "mitigating" in describing this retroactivity exception. One thing seems certain, that the principle variously described in Oliver and the treatises as ameliorative or mitigating is one which applies only in a criminal case. It is the reduction of a criminal penalty which constitutes the amelioration or mitigation[1] and distinguishes such a criminal statute from a constitutionally *287 prohibited ex post facto statute which "imposes a punishment for an act that was not punishable at the time it was committed, or that imposes additional punishment to that then prescribed." Matter of Coruzzi, 95 N.J. 557, 578 (1984), app. dism. 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 8 (1984). Smigelski adopted the term ameliorative out of Oliver and applied it as that court and the learned treatises had applied it  to justify retroactive application of a decreased criminal penalty. We hold that to be the sole meaning of the principle.
The "curative" exception is quite different. It generally includes "curative acts [which] are made necessary by inadvertence or error in the original enactment of a statute or in its administration." 2 Sutherland, Statutory Construction, § 41.11 at 410 (4th ed. 1973). Under this exception, an amendment to a statute can be given retroactive effect if it is designed merely to carry out or explain the intent of the original statute. Such application is consistent with the general rule that statutes are ordinarily prospective unless the Legislature indicates otherwise. As the court in Pacific Intermountain Express v. National Union Fire Ins. Co., 151 Cal. App.3d 777, 198 Cal. Rptr. 897 (1984) explained:
[A] statute will not be retroactively applied unless the Legislature clearly intended the law to be retroactive ... This does not apply to an amendment which merely clarifies rather than changes the meaning of a law. The reason for this exception is that no retroactive effect is given because the true meaning of the statute has always been the same. [151 Cal. App.3d at 787, 198 Cal. Rptr. 897 (citations omitted)]
*288 In essence, an amendment which falls within the curative exception can be retroactively applied consistent with the general rule of prospectivity because its purpose is to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act.
The Supreme Court in Gibbons referred to the ameliorative and curative exceptions in a single phrase. 86 N.J. at 523. It is likely that this is what has caused the regular linkage of these terms in judicial decisions addressing retroactivity issues. The obvious point of Gibbons however, as indicated in the express language of the case, was the curative exception. Indeed, the amendment at issue there (excluding gift, devise and bequest from equitable distribution) was given retroactive application because the court found it to be "curative." 86 N.J. at 524. In elucidating, Justice Pashman, writing for the court stated that the amendment was curative because "it reflects the Legislature's attempt to improve a statutory scheme already in existence." Ibid. Explaining the use of the term "improve," Justice Pashman declared that the amendment brought the law into harmony with the expectations of "donors and donees." Ibid. Presumably, it also brought the law into harmony with what the Legislature originally intended when it enacted the equitable distribution scheme. That is exactly what a curative amendment is meant to do and it is the basis for the exception in the first place: that the fairness problems of retroactivity are not implicated when an amendment is meant only to clarify what was originally intended.
Several cases have been decided since Gibbons which we think have failed to apprehend the distinction between the terms ameliorative and curative and have misread the word "improve" in delimiting the curative category. In Hart v. Fox, 204 N.J. Super. 564 (Law Div. 1985) and Cokenakes v. Ohio Casualty Ins. Co., 208 N.J. Super. 308 (Law Div. 1985), the trial judges ruled in favor of the retroactive application of civil statutes which constituted clear changes in the law. In so doing the judges, citing Gibbons, concluded that an "improvement" *289 in a statutory scheme falls within the ameliorative or curative exception thereby permitting the retroactive application of the amendment.[2] This analysis is wide of the mark.
As we have indicated, the ameliorative exception has no application in a non-criminal context. Nor can the curative exception be invoked merely because an amendment is deemed to better a statutory scheme. Presumably, each time the Legislature amends a statute it acts in good faith and seeks, by the amendment, to improve the scheme. If this was all that was required in order to meet the curative exception, every amendment would automatically be subject to retroactive application and the exception would engulf the rule of prospectivity. This cannot be countenanced. As we have observed, there are reasons based on considerations of fairness for the rule of prospectivity. This is why the exceptions to the rule have been carefully circumscribed. To consider an enactment which "improves" the statutory scheme (in itself a painfully subjective determination) as meeting the curative exception is at odds with the fundamental principal of fairness that new laws should not affect situations which predated them.
Given this reaffirmation of the meaning and scope of the curative exception it is clear that the amendment under consideration here should not be given retroactive effect. The pre-1983 statute prevented an individual injured in an automobile accident from recovering if the automobile was driven by an uninsured spouse. The 1983 amendment eliminated the interspousal ban and barred only the uninsured owner or operator of an automobile from Fund benefits. The amendment thus expanded the category of persons eligible to recover from the *290 Fund. This was a clear change in the law and not an enactment designed to clarify or carry out the intent of the pre-1983 statute. Accordingly, it was not curative and does not warrant retroactive application under that exception to the general rule of prospectivity.
Affirmed.
NOTES
[1] Everystatutory amendment which ameliorates or mitigates a penalty for a crime is not automatically subject to a presumption of retroactivity. The ameliorative amendment must be aimed at mitigating a legislatively perceived undue severity in the existing criminal law. See e.g. People v. Valentin, 129 Misc.2d 365, 493 N.Y.S.2d 85 (Sup. 1985) where a defendant serving a nine month sentence for a misdemeanor moved to be resentenced after the Legislature amended the law imposing a six month maximum sentence for most misdemeanors. The court, accepting the principles laid down in Oliver, supra, refused to apply the amendment retroactively noting that the amendment's sole purpose was to relieve the court backlog by eliminating the need for jury trials in most misdemeanor cases and was not enacted by the Legislature to mitigate a perceived harshness in the criminal law.
[2] Although the language used by this court in Commun. Workers v. Pub. Empl Rel. Com'n., supra, appears at first reading to support the conclusions reached in Hart and Cokenakes, we think that the amendment there, which was enacted in response to a court decision interpreting the original statute, was classicly "curative" and that the rather broad language in that case should be considered circumscribed by the facts presented.