**VIRGIN ISLANDS CARNIVAL COMMITTEE, INC., KENNETH BLAKE, CASWIL CALLENDER and DERRICK A. GUMBS, Plaintiffs**

**v.**

**LEGISLATURE OF THE VIRGIN ISLANDS and GOVERNMENT OF THE VIRGIN ISLANDS, Defendants**

VIRGIN ISLANDS CARNIVAL COMM. v. LEGISLATURE OF V.I.

Civil No. 336/2004

Territorial Court of the Virgin Islands

Division of St. Thomas and St. John

October 22, 2004

DESMOND L. MAYNARD, ESQ., St. Thomas, U.S. Virgin Islands, *Attorney for Plaintiffs*

CAROL THOMAS-JACOBS, ESQ., KERRY E. DRUE, ESQ., Assistant Attorneys General, Virgin Islands Department of Justice, St. Thomas, U.S. Virgin Islands, *Attorneys for Defendant Government of Virgin Islands*

HODGE, *Judge*

## MEMORANDUM OPINION

(October 22, 2004)

Before the Court are Plaintiffs' action for declaratory judgment and for injunction, Defendant Government of the Virgin Islands' ("GVI") responsive brief, Defendant Legislature of the Virgin Islands' ("Legislature") memorandum in response to Plaintiff's motion to dismiss, Plaintiff's brief on the merits, Defendant GVI's opposition to Plaintiff's motion for extension of time and motion to dismiss action for mootness. Plaintiffs seek a declaration that Defendants GVI and Legislature have no right to financial information beyond that which has been reported to Defendants annually since 1992, and an order enjoining the Virgin Islands Inspector General ("Inspector General") from conducting a proposed audit and enjoining the Legislature from compelling the Plaintiffs to appear before its Committee on Finance. For the reasons stated more fully herein, the Plaintiffs' request to enjoined Defendant GVI,[1] acting by and through the Inspector General, from conducting an audit of the Virgin Islands Carnival Committee, Inc. is DENIED.

### FACTS

Plaintiff Virgin Islands Carnival Committee, Inc. ("VICC") is a nonprofit private corporation duly organized and existing under the laws of the United States Virgin Islands since 1976. Plaintiff Kenneth Blake ("Blake") is the duly elected Chairman of VICC. Plaintiff Caswil Callender is the Executive Director of VICC. Plaintiff Derrick A. Gumbs ("Gumbs") is the duly elected Treasurer of VICC. Pursuant to its Articles of Incorporation signed 31st March 1976, VICC's objectives and purposes are to promote, supervise and direct all activities relating to the celebration of the annual Virgin Islands Carnival ("Carnival"), as well as, to assist in the promotion and celebration of lesser festival activities, including neighborhood festivities. Presently, VICC promotes, supervises and directs all official activities relating to the celebration of the annual Carnival.

---

[1]    Defendant Legislature of the Virgin Islands was dismissed from this action pursuant to Court Order dated 10th September 2004.

The Legislature appropriates and the Department of Housing, Parks and Recreation ("HP&R"), a department of GVI, grants annually to VICC funds from the Virgin Islands Treasury to assist VICC in putting on the annual Carnival activities. In 1999, VICC received $300,000 from HP&R for Carnival activities. In 2000, VICC received $250,000 from HP&R for Carnival activities. In 2001, VICC received $300,000 from HP&R for Carnival activities. In 2002, VICC received $900,000 from HP&R for Carnival activities. In 2003, VICC received $325,000 from HP&R for Carnival activities. And in 2004, VICC received $350,000 from HP&R for Carnival activities.

In addition to the money, GVI each year allows VICC to use without charge the Lionel Roberts Stadium, Fort Christian Parking Lot, and Emancipation Gardens for the Carnival activities held at those locations. Each year GVI foregoes substantial revenues from parking fees to allow VICC the exclusive use of the Fort Christian Parking Lot for the Carnival Village. The GVI bears many auxiliary costs associated with the Carnival activities, including but not limited to, expenses to provide security, cleanup and trash removal by its various departments. GVI also provides its employees with administrative leave to participate and attend certain Carnival activities such as the food fair, J'ouvert and children's parade. The Department of Tourism actively markets the annual Virgin Islands Carnival celebrations at substantial costs to GVI.

VICC pursuant to the miscellaneous disbursement vouchers given with the foregoing payments received from HP&R agreed to submit the required financial reports with invoices, receipts and cancelled checks covering the cost incurred for all events to HP&R in accordance with Section 29 of Title 2 of the Virgin Islands Code. Since 1992, VICC has been required to submit certain financial information to Legislature and GVI, and VICC has submitted unaudited financial reports. By letter dated March 1st, 2002, HP&R's Commissioner, Ira M. Hobson, informed VICC's Executive Director, Caswil Callender, that the VICC's financial reports were not in compliance with 2 V.I.C. § 29[2] because

---

[2]   V.I. CODE ANN., tit. 2, § 29 provides:

"(a) Notwithstanding any other provision of law, all recipients of grants of funds from the Treasury of the Virgin Islands for whatever purpose, but excluding scholarship grants, shall submit to the Governor and the Committee on Finance of the Legislature within six (6) months from the effective date of said appropriation, or whenever at least 75% of the appropriation is expended, whichever occurs sooner, an initial financial

VICC failed to submit copies of invoices, cancelled checks and/or receipts with the reports. In October 2002, Plaintiff Callender wrote to HP&R's Commissioner, Ira M. Hobson, and agreed to provide photocopies of the required checks and receipts.

GVI, acting by and through the Inspector General, in a letter dated September 16th, 2002 notified VICC that it planned to conduct an audit of VICC. In letter dated October 16th, 2002, VICC objected to the Inspector General conducting an audit of a private corporation. The Inspector General sought advice from the Virgin Islands Attorney General ("Attorney General") on the issue of whether the Inspector General has authority to audit VICC. The Attorney General issued an advisory letter dated September 22nd, 2003 stating that the office of the Inspector General can audit the books and records of the VICC to review the receipt and use of GVI's funds. The Attorney General concluded that there is no question that HP&R is a department of GVI and sponsors VICC as a program, and therefore, pursuant to V.I. ANN. Code, tit. 3, § 1203(a)(4)[3], the Inspector General has the authority, if not the duty, to audit VICC's books. In a letter dated April 1st, 2004, the Attorney General clarified the advice given in its September 22, 2003 advisory letter, in response to VICC Executive Director Callender's letter dated March 4th, 2004 addressed to the Inspector General. The Attorney General citing to 3 V.I.C. § 1203(a)(1)[4] repeated his assertion that the

_____

statement. Every six (6) months thereafter or whenever 100% of the appropriation is expended, whichever occurs sooner, an updated financial statement shall be submitted to the Governor and the Committee on Finance of the Legislature. The submission of this second financial statement shall be a condition precedent to the consideration of any application for renewal of said grant or the awarding of any other grant.

"(b) The financial statements required under subsection (a) of this section shall be detailed, and disclose up to the date of the statement, (1) the amount and nature of all expenditures made, (2) any receipt of public funds, (3) a distinction between funds expended outside the territory and those expended within the territory, and (4) the name of all persons responsible for the preparation of said statement. Any financial statement submitted under subsection (a) of this section must be in a form generally accepted for financial statements."

[3]    V.I. CODE ANN., tit. 3, § 1203(a)(4) provides:

"(a) The Office of the V.I. Inspector General shall ... (4) conduct audits, inspections, and investigations relating to the programs and operations of any Government department, board, bureau, commission, or instrumentality, including the legislative and judicial branches; ...".

[4]    V.I. CODE ANN., tit. 3, § 1203(a)(1) provides:

Inspector General has the authority and the duty to audit all programs and operations of GVI. The Attorney General opined that as a result of substantial government funding, the VICC is clearly a program sponsored by GVI, and because VICC commingled government funds with non-government funds, the Inspector General can audit all the books of VICC in order to follow GVI's monies.

In May 2004, the Committee of Finance of Legislature served Plaintiffs Blake and Gumbs with subpoenas to compel Plaintiffs to testify at a hearing set for June 4th, 2004 and produce at such hearing "the list of all donor (sic) and the amounts each given (sic) in-kind or monetarily; all contracts with calypsonians, all contracts for services, all documents on all revenues received for each event, and all list of all expenses for each event." In a letter dated June 3rd, 2004, the Plaintiffs objected to the production and submission of the aforementioned documents and information to the Legislature, its Committee on Finance, or any other legislative committee.

Plaintiffs VICC, Blake, Callender and Gumbs then filed this action on July 9th, 2004 for declaratory judgment or to enjoined Defendants Legislature and GVI. The Legislature's Committee on Finance rescinded its May 28th, 2004 subpoenas, which were served on Plaintiffs Blake and Gumbs, and reissued subpoenas to Plaintiffs Blake, Callender and Gumbs in July 2004. The Legislature's Committee of Finance, in its July 2004 subpoenas, requested Plaintiffs to provide: (a) all contracts with calypsonians wherein funds received from the Government of the Virgin Islands were utilized; (b) all contracts for services wherein funds received from the Government of the Virgin Islands were utilized; (c) all documents evidencing revenues received for each event that was staged utilizing funds received from the Government of the Virgin Islands; and (d) a list of all expenses for each event where funds from the Government of the Virgin Islands were utilized. In a letter dated August 12th, 2004, from VICC to the Legislature, Plaintiff Blake stated that in accordance with the Legislature's recent demand on VICC, Plaintiffs were submitting copies of VICC's financial reports for the reporting periods from 2001 through 2003.

---

"(a) The Office of the V.I. Inspector General shall ... (1) conduct and supervise audits, inspections, and related investigations or (sic) programs and operations of the Government of the Virgin Islands; ...".

Subsequent to the filing of Plaintiffs action on July 9th, 2004, 2 V.I.C. § 29 and 3 V.I.C. § 1203 were amended on July 15th, 2004. Sections 8 of Act No. 6677, the July 15, 2004 amendment, amended Title 3 Virgin Islands Code, Section 1203, subsection (a) by re-designating the current paragraph (5) as paragraph (6) and inserting a new paragraph (5) to read:

> "(5) Upon the request of either the Governor, the Legislature, or on his own initiative, the Virgin Islands Inspector General shall conduct audits, inspections, and investigations of any recipient of funds from the treasury of Government of the Virgin Islands."

Section 9 of Act No. 6677, the July 15, 2004 amendment, amended Title 2 Virgin Islands Code, Section 29, by adding a subsection (2) to read:

> "(c) Any recipient of funds from the treasury of the Government of the Virgin Islands shall be subject to audit by the Virgin Islands Inspector General and the Post Auditor of the Virgin Islands Legislature."

## DISCUSSION

### 1. Retroactive Legislation

Defendant GVI contends that this matter is now moot because the Twenty-Fifth Legislature of the Virgin Islands of the United States enacted "curative" legislation on July 15, 2004 that clarifies that the Inspector General and the Legislature's Post Auditor have statutory authority to audit VICC. In the present case, both the filing of Plaintiffs' complaint and the receipt and expenditure of Government funds, which provide the basis of Plaintiffs declaratory judgment and injunction action, occurred prior to the amendments to 2 V.I.C. § 29 and 3 V.I.C. § 1203.

The Court's first task is to determine whether Sections 8 and 9 of Act No. 6677, the amendments to 2 V.I.C. § 29 and 3 V.I.C. § 1203, are applicable to the present case, or whether the Court must rely on the language of 2 V.I.C. § 29 and 3 V.I.C. § 1203 in effect at the time Plaintiffs received and administered the funds for Carnival 1992 through 2004.

As a general rule of statutory construction, statutory amendments are applied prospectively,[5] unless: (1) the Legislature expressed an intention, either in language of the amendment or in its legislative history, that it applies retroactively; (2) the amendment is ameliorative;[6] (3) the amendment is curative; (4) the amendment is remedial; or (5) the amendment only affects procedural matters. *Landgraf v. USI Film Products*, 511 U.S. 244, 273, 114 S. Ct. 1483, 1501, 128 L. Ed. 2d 229 (1994); *Silverlight v. Huggins*, 488 F.2d 107 (3d Cir. 1973); *Virgin Islands Maritime Service, Inc. v. Puerto Rico Maritime Shipping Authority*, 978 F. Supp. 637, 644 (D.V.I. 1997) (FN.10); *Government of Virgin Islands ex rel. Simanca v. Proctor*, 39 V.I. 28 (1998); *Vernon v. Cassadaga Valley Central School*, 49 F.3d 886, 890 (2d Cir. 1995) ("[n]o one has a vested right in any given mode of procedure"). These exceptions to the general rule of prospective application of an amendment apply only if such retroactive application does not violate any constitutional protections. *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313, 114 S. Ct. 1510, 1519, 128 L. Ed. 2d 274 (1994); *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1243 (3d Cir. 1987); *Daughters of Miriam Center for the Aged v. Mathews*, 590 F.2d 1250, 1252 (3d Cir. 1978); *Virgin Islands Maritime Service, Inc. v. Puerto Rico Maritime Shipping Authority*, 978 F. Supp. 637, 643 (D.V.I. 1997).

The legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place to give people confidence about the legal consequences of their actions. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855, 110 S. Ct. 1570, 1586, 108 L. Ed. 2d 842 (1990). Where it is claimed that newly enacted legislation is to have retroactive operation, as is the case here, such claim must clearly be the intention of the Legislature, or the Court will presume that the Legislature is acting for the future and not for the past. *Virgin Islands Maritime Service, Inc. v. Puerto Rico Maritime Shipping Authority*, 978 F. Supp. 637, 644 (D.V.I. 1997) (*citing White v. United States*, 191 U.S. 545, 552 (1903)); *Jordan v. Erschen*, 45 V.I. 247 (Terr.

---

[5] When a new law is applied prospectively, it will only govern causes of action that arise after its effective date. *Regent Care Center, Inc. v. Hackensack City*, 20 N.J. Tax 181, 188 (2001).

[6] The ameliorative exception applies only in cases where an amendment has decreased a criminal penalty. *Kendall v. Shedeker*, 219 N.J. Super. 283, 286-87, 530 A.2d 334 (App. Div. 1987).

39

Ct. 2003). Amendments to statutory provisions are not to be applied retroactively or construed to change the status of existing causes of action pursuant to earlier unamended provisions, absent the clear intent by the Legislature to do so. *Larrabee v. Government of the Virgin Islands*, 40 V.I. 46 (Terr. Ct. 1999) (quoting *Russel, et al. v. U.S.*, 278 U.S. 181, 187-88, 49 S. Ct. 121, 123 (1929) (citations omitted)). Act No. 6677 does not contain an expressed or implied directive requiring retrospective application of Sections 8 and 9. In fact, it is silent on the subject.

Defendant GVI argued that the amendments to 2 V.I.C. § 29 and 3 V.I.C. § 1203 enacted in Act No. 6677, July 15, 2004, come within the curative exception[7] and must be given retroactive effect. The Court finds otherwise. Under the curative exception to prospective applicability, an amendment to a statute may be given retroactive effect if it is designed to: rectify a governmental scheme that has failed in its purpose; carry out or explain the intent of the original legislation; clarify or technically correct an unclear and ambiguous statute. *Silverlight v. Huggins*, 488 F.2d 107 (3d Cir.1973); *See Pueblo Intern., Inc. v. Government of Virgin Islands*, 327 F. Supp. 2d 533, 536 (D.V.I. App. Div. 2004); *In re F.D. Processing, Inc.*, 119 Wash. 2d 452, 460, 832 P.2d 1303 (1992); *Kendall v. Shedeker*, 219 N.J. Super. 283, 287-88, 530 A.2d 334 (App. Div. 1987). A curative amendment is designed to remedy a perceived imperfection in or misapplication of existing legislation, and merely clarifies rather than changes the meaning, intended scope or purpose of the original legislation. *Kendall*, 219 N.J. Super. at 288.

Sections 8 and 9 of Act No. 6677 instituted substantive changes that may not be applied to VICC's past receipts and expenditures of GVI's funds absent a direct statement from the Legislature. Substantive changes are generally defined as those that create, confer, define, or destroy rights, liabilities, causes of action, or legal duties. *Harrison v. Otis Elevator Co.*, 935 F.2d 714, 719 (5th Cir. 1991). The original legislation was neither unclear nor misapplied. Before July 15, 2004, 2 V.I.C. § 29 required grant recipients, excluding scholarship grantees, of funds from the Virgin Islands Treasury, to provide the Governor and the Legislature's Committee on Finance detailed financial statements at

---

[7] As Defendant Government of the Virgin Islands argues only the curative exception, the court will not discuss the other exceptions to prospective applicability of Sections 8 and 9 of Act No. 6677.

designated times from the appropriation of the funds. Prior to July 15, 2004, 3 V.I.C. § 1203 provided that the Inspector General could conduct and supervise audits, inspections and investigations relating to the programs and operations of GVI and any Government department, board, bureau, commission, or instrumentality, including the legislative and judicial branches, as well as promote efficiency and detect fraud and abuse in Government programs. Sections 8 and 9 of Act No. 6677, the amendments to 2 V.I.C. § 29 and 3 V.I.C. § 1203, expand the Inspector General and the Legislature Post Auditor's investigative reach beyond operations and programs of GVI and grant recipients' financial statements to anyone, including unsuspecting employees and vendors of GVI, who accepted payments from the Virgin Islands Treasury, after July 15, 2004. Unwittingly, recipients of funds from the Virgin Islands Treasury, such as employees and vendors of GVI, are now subject to the Inspector General and the Legislature Post Auditor's unwelcome intrusions, at their time and choosing, into their financial matters. This constitutes a clear change in the scope and purpose of the prior versions of 2 V.I.C. § 29 and 3 V.I.C. § 1203.

The fact that the Legislature and GVI in their responsive pleadings and motions characterize Sections 8 and 9 of Act No. 6677 as clarifying or curative does not make them so. *Pueblo Intern., Inc. v. Government of Virgin Islands*, 327 F. Supp. 2d 533, 536 (D.V.I. App. Div. 2004) (the fact that a Senator called the amendment clarifying did not make it so). It is up to this Court to analyze Sections 8 and 9 of Act No. 6677 and their effect to determine whether the amended new subsections were clarifying or substantive. *Id.* Because Sections 8 and 9 of Act No. 6677 instituted substantive changes to 2 V.I.C. § 29 and 3 V.I.C. § 1203, we need not consider the legislative history to determine if Sections 8 and 9 of Act No. 6677 were intended to be curative legislation. *Pueblo Intern., Inc. v. Government of Virgin Islands*, 327 F. Supp. 2d 533, 536 (D.V.I. App. Div. 2004).

Based upon the foregoing discussion, Sections 8 and 9 of Act No. 6677, the amendments to 2 V.I.C. § 29 and 3 V.I.C. § 1203, which allow the Inspector General, as well as the Legislature's Post Auditor, to audit, inspect and investigate any recipient of funds from the Virgin Islands Treasury, are construed by the Court as operating prospectively, and the pre-July 15, 2004 versions of 2 V.I.C. § 29 and 3 V.I.C. § 1203 will be applied to the facts of this case.

41

## 2. Whether the Inspector General is statutorily authorized to audit VICC pursuant to the earlier version of 3 V.I.C. § 1203

The Court will first look to the plain language set forth in 2 V.I.C. § 29 and 3 V.I.C. § 1203 to determine whether the Inspector General has the authority to audit the books and records of VICC. It is clear from a careful reading of 2 V.I.C. § 29 that there is no express grant of authority to the Inspector General to audit, inspect or investigate the books and records of VICC, a private non-profit corporation. 2 V.I.C. § 29 simply requires VICC, as a grant recipient, to file detailed financial statements periodically from the appropriation of funds from the Virgin Islands Treasury. It is a cardinal rule of statutory construction that when a statute is clear and unambiguous in its language and intent, and conveys a clear definite meaning, a court should look no farther than those words in interpreting the statute. *Danbury, Inc. v. Olive*, 22 V.I. 183 (D.V.I. 1986). As noted previously, 2 V.I.C. § 29 is clear and unambiguous. VICC further obligated itself, pursuant to the notes set forth in the miscellaneous disbursement vouchers from 1999 through 2004, to provide HP&R with invoices, receipts and cancelled checks covering the cost incurred for all events, along with the financial reports.

The disbursement of funds by HP&R for subsequent years does not negate VICC's continuing obligations set forth in prior disbursement vouchers. An updated detail financial statement submitted when 100% of the appropriated funds are expended is the only condition precedent set forth in 2 V.I.C. § 29 to the consideration of any application for the renewal or awarding of any more grants, and which consequently may be waived.

Based upon the foregoing, the court finds that associated with the grant of funds from the Virgin Islands Treasury, the required detail financial reports pursuant to 2 V.I.C. § 29, and the requested invoices, receipts and cancelled checks pursuant to the miscellaneous disbursement vouchers, is the implied right granted to HP&R to verify the accuracy of (i.e., audit) the financial information presented to it by VICC. Plaintiffs acknowledged at the September 22, 2004 hearing that representatives of HP&R were permitted in the past to visit VICC's offices to examine its books and records. Plaintiffs' Brief on the Merits further indicated that they understood that HP&R had the authority to determine whether VICC is complying with its program, Carnival. (Plaintiffs' Brief on the Merits, p. 8.) It is undisputed that HP&R is a

department of GVI. Arguably, GVI may appoint the Inspector General on behalf of its department HP&R, as its agent of choice, to audit the supporting documents, accounts, financial records, accounting measures underpinning VICC's submitted financial reports.

Section 1203(a)(4) of Title 3 of the Virgin Islands Code provides: "(a) The Office of the V.I. Inspector General shall ... (4) conduct audits, inspections, and investigations **relating to** the programs and operations of any Government department, board, bureau, commission, or instrumentality, including the legislative and judicial branches; ..." (emphasis added). Section 1203(b) of Title 3 of the Virgin Islands Code further provides that the Inspector General may have access to all records, reports, audits, reviews, documents, papers, recommendations, or other material available to the applicable entity which relate to programs and operations of the Government, make such investigations and reports **relating to the administration of such programs** and operations and require by subpoena the production of all information, documentation, reports, answers, records, accounts, papers, other data and documentary evidence, and witnesses necessary in the performance of his duties authorized by VI Code ANN., tit. 3, Sections 1200 *et seq.* (emphasis added).

Section 1203 of Title 3 of the Virgin Islands Code does not give the Inspector General a general grant of authority to audit, inspect and investigate private citizens', including nonprofit corporations', financial records and books. Pursuant to 3 V.I.C. § 1203, the Inspector General has authority to investigate programs and operations of HP&R, a department of GVI. VICC is an incorporated nonprofit corporation and not a department, program or operation of GVI. This court is hard press to find that VICC became a program of GVI simply by receiving monies from GVI to put on Carnival activities. The Inspector General may not audit VICC merely because of a contractual relationship, or because some public purpose is involved, or because public funds have been paid over, in trust or otherwise. *See Resident Advisory Board of Philadelphia, Inc. v. City of Philadelphia*, 314 A.2d 591 (1974). Private citizens who engage in legitimate exchange of goods and services with GVI should not be subject to audit by the Inspector General, unless otherwise provided for in their contractual relations with GVI or by legislation.

However, pursuant to 3 V.I.C. § 1203, the Inspector General has authority to investigate and audit programs and operations of HP&R, a

department of GVI. Plaintiffs conceded in their Brief on the Merits that the Virgin Islands Carnival[8] is a program of HP&R, a department of Defendant GVI. (Plaintiffs' Brief on the Merits; p. 8.) This Court agrees. There is no question that the Virgin Islands Carnival is a treasured national tradition rightly belonging to the people of the Virgin Islands and administered by VICC as a program of HP&R, a department of GVI. VICC has been entrusted with the activities of the annual Carnival, and is supported in whole or in part by appropriations of public funds.

The facts and statutory language before the Court are similar to the facts and statutory language applied in *Adair v. Rose Law Firm*, 867 F. Supp. 1111 (D.D.C. 1994). In *Adair*, the Inspector General of the Resolution Trust Corporation ("RTC") brought a motion for summary enforcement of administrative subpoena duces tecum against the Rose law firm to produce its client list, and the law firm moved for protective order. *Adair v. Rose Law Firm*, 867 F. Supp. at 1113. The RTC acted as the receiver for failed thrifts. *Id.* The Rose Law Firm entered into several legal service agreements with the Federal Deposit Insurance Corporation ("FDIC") and the RTC to provide them with legal services with respect to a number of failed thrift institutions. *Id.* The Inspector General of the RTC sought to conduct an independent investigation of the Rose Law Firm to determine whether Rose had failed to disclose any actual or potential conflicts of interest on matters for which it was retained by the FDIC or the RTC and issued a subpoena duces tecum to the Rose Law Firm for information regarding the firm's clients. *Adair v. Rose Law Firm*, 867 F. Supp. at 1114. The Inspector General Act granted the RTC Inspector General authority to conduct investigations and audits and stated: "It shall be the duty and responsibility of each Inspector General ... to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of [the agency]." *Adair v. Rose Law Firm*, 867 F. Supp. at 1115. The Court found the "relating to" language a

---

[8] The Carnival tradition in the Virgin Islands began in 1912. In 1952 Ron de Lugo and others revived Carnival in St. Thomas and Carnival has been celebrated every year since. Carnival is a month long event that includes calypso shows, food fair, queen pageants, steel pan shows, parades and more. St. Thomas' annual post-Easter Carnival is an incredible spectacle of spirit and tradition. The United States Virgin Islands celebrated its 50th anniversary of Carnival in 2002. The V.I. Carnival Committee by comparison has only been in existence since its incorporation in 1976. (Information garnered from the parties' pleadings and attachments, Virgin Islands Department of Tourism's website, Internet search and common knowledge.)

broad grant of authority rather than a limitation, and concluded that this language is expansive enough to extend the RTC Inspectors General's authority beyond investigations of the agency itself to investigations of individuals and entities outside the agency involved with an agency's programs. *Id.* (Emphasis added).

As in *Adair*, this Court finds the *"relating to"* language in 3 V.I.C. § 1203 to be a broad grant of authority to the Virgin Islands Inspector General. This language is expansive enough to extend the Inspector General's authority to investigate individuals and entities involved with a program of GVI, or GVI's department. Consequently, the Court rejects Plaintiffs narrow reading of 3 V.I.C. § 1203 that limits the Inspector General's audit authority to the receipt and expenditure of public funds, as part of a fraud and abuse investigation.

█ Based upon a review of the record the Court is convinced that VICC is significantly involved with HP&R's Carnival program. The Carnival activities are underwritten annually with significant funds from the Virgin Islands Treasury, which are expended and managed completely by VICC. VICC is practically synonymous with Virgin Islands Carnival, and is substantially involved in its administration. Section 1203(b)(3) of Title 3 of the Virgin Islands Code specifically provides that the Inspector General may make such investigations and reports relating to the administration of programs of HP&R as are, in the judgment of the Inspector General, necessary. Furthermore, 3 V.I.C. § 1203(b) permits the Inspector General to access and subpoena any and all information, documentation, reports, answers, records, accounts, papers, other data and documentary evidence (hereinafter "documents") relating to GVI's programs and operations even if they are in the custody of private citizens. Here, there is no *quid pro quo* as is the case with government employees and vendors who provide measurable goods or services, which can be easily identified, in exchange for payment from funds of the Virgin Islands Treasury. *See Indiana State Bd. of Accounts v. Consolidated Health Group, Inc.*, 700 N.E.2d 247 (Ind. App. 1998). Private citizens and entities that: (i) receive and expend public funds to administer a government program, or (ii) perform an integral part of a governmental function (i.e., operation) for the benefit of GVI, its departments or the general public may be audited, inspected and investigated by the Inspector General pursuant to 3 V.I.C. § 1203. *See Adair v. Rose Law Firm*, 867 F. Supp. 1111 (D.D.C. 1994); *See also*

45

*Inspector General v. Banner Plumbing Supply, Co., Inc.*, 34 F. Supp. 2d 682 (N.D. Ill. 1998).

## CONCLUSION

Sections 8 and 9 of Act No. 6677 instituted substantive changes to 2 V.I.C. § 29 and 3 V.I.C. § 1203 by expanding the Inspector General and Legislature Post Auditor's audit authority from Government programs and operations and grant recipients' financial statements to include any recipient of funds from the Treasury of the Government of the Virgin Islands, and absent clear legislative intent to apply retroactively, must be applied prospectively. Pre July 15, 2004 2 V.I.C. § 29 conveys an implied grant of authority to the Inspector General to verify the accuracy of the submitted financial information on behalf of GVI's departments. Pre July 15, 2004 3 V.I.C. § 1203 does not allow the Inspector General to audit private citizens and entities that provide measurable goods or services in exchange for payment from funds of the Virgin Islands Treasury. However, it does permit the Inspector General to audit private citizens and entities that receive and expend public funds to administer a government program, or perform an integral part of a governmental function for the benefit of GVI, its departments or the general public.

Accordingly, the Court concludes that the Inspector General can audit the Virgin Islands Carnival Committee, Inc., and access, subpoena, investigate and examine any and all documents relating to the Virgin Islands Carnival, including but not limited to contributions and sponsorships solicited from the general public to underwrite Carnival, receipts and invoices of expenditures regardless of whether funded with private or public funds and contracts and payments to vendors, suppliers and performers. The Plaintiffs' request to enjoin such audit will therefore be denied.