28 A.3d 1246

STATE OF NEW JERSEY, THROUGH LESLIE A. HAYLING, JR., D.D.S., PLAINTIFF–APPELLANT, v. CORRECTIONAL MEDICAL SERVICES, INC., ALLCARE DENTAL GROUP, L.L.C., VICKIE BYBEE, DAVID MEEKER, JANICE BELL, D.M.D., AND LIONEL ANICETTE, M.D., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 13, 2011—Decided October 11, 2011.

Before Judges PAYNE, REISNER and HAYDEN.

*Karen A. Confoy* argued the cause for appellant (*Sterns & Weinroth,* attorneys; *Ms. Confoy* and *Erica S. Helms,* on the briefs).

*Diana L. Spagnuolo* (Ballard Spahr L.L.P.) of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondents (*Genova, Burns & Giantomasi* and *Ms. Spagnuolo,* attorneys; *Kathleen Barnett Einhorn, John B. Kearney* and *Ms. Spagnuolo,* of counsel and on the brief).

*Lisa D. Kutlin,* Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (*Paula T. Dow,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Ms. Kutlin, Megan Lewis,* Deputy Attorney General, and *Samuel S. Cornish,* Deputy Attorney General, on the brief).

*Ambrosio & Tomczak,* attorneys for respondents AllCare Dental Group, L.L.C. and Janice Bell, D.M.D., join in the brief filed on behalf of respondents Correctional Medical Services, Inc., Vickie Bybee and David Meeker.

*Hill Wallack L.L.P.,* attorneys for respondent Lionel Anicette, M.D., join in the brief filed on behalf of respondents Correctional Medical Services, Inc., Vickie Bybee and David Meeker.

The opinion of the court was delivered by

PAYNE, P.J.A.D.

The New Jersey False Claims Act (NJFCA), *N.J.S.A.* 2A:32C–1 to –15 and *N.J.S.A.* 2A:32C–17 to –18, was enacted on January 13, 2008. Section 19 of that Act provided: "This act shall take effect on the 60th day after enactment." *See L.* 2007, *c.* 265, § 19. This appeal raises the issue whether, despite that language, the NJFCA should be given retroactive effect.

## I.

The issue arises in the following factual context. From 1996 through March 31, 2005, Correctional Dental Associates (CDA), a New Jersey corporation founded by Leslie A. Hayling, Jr., D.D.S., furnished dental services to inmates of New Jersey's prisons as a subcontractor pursuant to a contract between the State and defendant Correctional Medical Services, Inc. (CMS). In anticipation of the expiration of that contract, in 2004, the Department of Corrections, through the Division of Purchase and Property of the State Department of the Treasury, solicited bids for a new two-year combined health and dental services contract with two one-year optional extensions. CMS responded, submitting a bid with two options: either for CMS to directly provide all services or for it to subcontract with CDS for the provision of the dental service part of the contract. The contract was awarded solely to CMS, effective April 1, 2005. Thereafter, CMS was granted a one-year extension, and then an extension for a "transition period" to September 30, 2008.[1] The medical aspect of the contract was performed by CMS; the dental portion was performed by defen-

---

[1] Thereafter, medical and dental services were provided by the University of Medicine and Dentistry of New Jersey.

dant AllCare Dental Group, L.L.C., a subcontractor that was closely allied with CMS. Defendant Vickie Bybee was Senior Vice President and David Meeker was Regional Vice President of CMS; defendants Janice Bell, D.D.S. and Lionel Anicette, M.D. were co-owners and co-founders of AllCare.

In 2005, Hayling commenced investigating CMS and AllCare. That investigation led him to conclude that AllCare was submitting false claims for payment under the dental service portion of the contract. In May 2008, Hayling informed the Office of the Attorney General of his intention to file a *qui tam*[2] action, pursuant to *N.J.S.A.* 2A:32C–5b, against CMS and AllCare alleging violations of the NJFCA. A pre-filing copy of the complaint was furnished to the Attorney General. Thereafter, in response to its request, Hayling provided the Office of the Attorney General with documents in support of that complaint. On August 25, 2008, Hayling filed the complaint under seal and served it upon the Attorney General as required by *N.J.S.A.* 2A:32C–5d.

Separately, the State, after investigation, determined that the performance by CMS of its contract for provision of medical and dental services did not meet performance standards, and it assessed liquidated damages, which were deducted from amounts due under the contract. On November 10, 2008, CMS filed an action in lieu of prerogative writs against the State to contest that assessment. However, the suit was dismissed without prejudice to CMS's right to pursue claims against the State arising from the same facts under the Contractual Liability Act, *N.J.S.A.* 59:13–1 to 10. On April 8, 2010 we affirmed the dismissal in an unpublished opinion. *Correctional Med. Servs, Inc. v. State, Dep't of Treasury*, No. A–3820–08, 2010 *WL* 1425064 (App. Div. April 8,

---

[2] *Qui tam* is short for *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, meaning, who pursues this action on our Lord the King's behalf as well as his own. *Rockwell Int'l Corp. v. U.S.*, 549 *U.S.* 457, 463 n. 2, 127 *S.Ct.* 1397, 1403 n. 2, 167 *L.Ed.*2d 190, 200 n. 2 (2007). Pursuant to *N.J.S.A.* 2A:32C–7, the person bringing the action, known as the "relator" is provided a share in the proceeds of a successful action.

2010). On May 5, 2009, CMS instituted a second civil action against the State. That action remains pending.

On September 23, 2009, the State declined to exercise its right, pursuant to *N.J.S.A.* 2A:32C–5d and e, to intervene in the *qui tam* litigation, but it permitted the case to proceed.[3] The complaint, alleging violations of the NJFCA, unjust enrichment and fraud, was therefore unsealed and served upon defendants. Following service, defendants moved to dismiss the complaint, arguing that Hayling's claims involved alleged conduct occurring prior to the effective date of the NJFCA, and thus not subject to that Act. Additionally, defendants argued that Hayling lacked standing to bring claims of unjust enrichment and fraud on the State's behalf. The State filed a statement of interest in defendants' motions, and it was granted leave to appear as amicus.

Following a hearing, the motion judge granted defendants' motions, ruling that because the events alleged in the underlying complaint as violating the NJFCA occurred from April 1, 2005 through March 31, 2007, but the NJFCA did not become effective until March 13, 2008, the Act was inapplicable. In doing so, the judge gave the Act a wholly prospective application, determining that none of the exceptions to the general rule that a statute is to be applied prospectively was applicable. Additionally, the judge dismissed Hayling's common-law causes of action for lack of standing. This appeal of the judge's dismissal of Hayling's NJFCA claims followed. Hayling has not appealed from the dismissal of his common-law claims.

## II.

■ Having carefully reviewed the legal arguments presented by the parties and the State, we conclude that the motion judge was correct in his determination, as a matter of law, that the

---

[3] *N.J.S.A.* 2A:32C–6b gives the Attorney General the right to dismiss an action for good cause shown, upon notice to the relator and an opportunity to be heard, notwithstanding the objections of the relator.

NJFCA is not retroactively applicable to conduct occurring prior to its effective date. *See Manalapan Realty v. Manalapan Twp. Comm.*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995). In reaching this conclusion, we commence with the Supreme Court's observation that:

> The courts of this State have long followed a general rule of statutory construction that favors prospective application of statutes. The rationale for this rule has been succinctly stated as follows:
>
>> It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair. There is general consensus among all people that notice or warning of the rules that are to be applied to determine their affairs should be given in advance of the actions whose effects are to be judged by them. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible as to law which has not been made. [2 Sutherland, *Statutory Construction*, § 41.02 at 247 (4th ed. 1973) (quoted in *Weinstein v. Investors Savings [& Loan Ass'n,]* 154 *N.J.Super.* 164,] 167 [381 *A.*2d 53 (App.Div.1977) ]).
>
> [*Gibbons v. Gibbons*, 86 *N.J.* 515, 521–22, 432 *A.*2d 80 (1981) (citations and footnote omitted).]

*See also, e.g., Cruz v. Central Jersey Landscaping, Inc.*, 195 *N.J.* 33, 45, 947 *A.*2d 1228 (2008).

Although the Court has held that the rule of interpretation just set forth is not to be applied mechanically, and it has recognized exceptions to the rule, the Court has stated that those exceptions are applicable in instances in which "there is no clear expression of intent by the Legislature that the statute is to be prospectively applied only." *Gibbons, supra*, 86 *N.J.* at 522, 432 *A.*2d 80. In the present case, the fact that the Legislature postponed the Act's effective date provides clear evidence that it envisioned only prospective application. *See Twiss v. State*, 124 *N.J.* 461, 468, 591 *A.*2d 913 (1991) (noting that a postponed effective date is an indicium that the Legislature intended a statute to have prospective application) (citing Sutherland, *Statutory Construction*, § 41.04 at 350 (4th ed. 1986)); *see also Sarasota–Coolidge Equities II, L.L.C. v. S. Rotondi & Sons, Inc.*, 339 *N.J.Super.* 105, 116, 770 *A.*2d 1264 (App.Div.2001) (applying this principle and citing multiple decisions construing the Uniform Commercial Code and other statutes holding likewise); *Town of Secaucus v. Hackensack*

*Meadowlands Dev. Comm'n,* 267 *N.J.Super.* 361, 377, 631 *A.*2d
959 (App.Div.1993) ("Postponement of a statute's effective date
indicates that it is to have only prospective application"), *certif.*
*denied,* 139 *N.J.* 187, 652 *A.*2d 175 (1994); *see generally* Norman
J. Singer and J.D. Shambie Singer, *Statutes and Statutory Con-*
*struction* § 41.4 at 400–18, 437 (7th ed. 2009).

As the State noted in its brief on appeal, the Legislature
declined to follow the model of some other states, which specified
that their false claims acts would have retroactive application. *See*
New York False Claims Act, *L.* 2007, *c.* 58, § 93 ("section thirty-
nine of this act [Civil actions for false claims] shall apply to claims
filed or presented prior to, on or after April 1, 2007 [the Act's
effective date]."); *Cal. Gov.Code* § 12654(b) ("A civil action under
Section 12652 may be brought for activity prior to January 1, 1988,
if the limitations period set in subdivision (a) has not lapsed.").

■■■ As our Supreme Court has held:

" 'In the interpretation of a statute our overriding goal has consistently been to
determine the Legislature's intent.' " *Young v. Schering Corp.,* 141 *N.J.* 16, 25 [660
*A.*2d 1153] (1995) (quoting *Roig v. Kelsey,* 135 *N.J.* 500, 515 [641 *A.*2d 248] (1994)).
As a general rule, that process begins with an examination of the plain language of
the statute. Where a statute is clear and unambiguous on its face and admits of
only one interpretation, a court must infer the Legislature's intent from the
statute's plain meaning. A court may neither rewrite a plainly-written enactment
of the Legislature nor presume that the Legislature intended something other than
it expressed by way of the plain language. "[W]e need delve no deeper than the
act's literal terms to divine the Legislature's intent." [*State v.*] *Butler,* 89 *N.J.*
[220,] 226 [445 *A.*2d 399 (1982) ].

[*O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002) (citations omitted).]

The New Jersey False Claims Act provides clear evidence of the
Legislature's intent that the Act be applied prospectively. We
thus need no further analysis to buttress our conclusion that the
motion judge properly decided this issue.

III.

Hayling, nonetheless, urges us to look further, which we do for
purposes of completeness.

■ In *Gibbons,* the Court recognized as an exception to the presumption of prospective application those "statutes in which the Legislature has expressed the contrary intent; *i.e.,* that the statute be applied retroactively." *Gibbons, supra,* 86 *N.J.* at 522, 432 *A.*2d 80. Hayling argues that such a legislative intent can be garnered in this case from the description of the Act given by its co-sponsor, Assemblyman Herb Conaway, Jr., to the Assembly's Judiciary Committee during its final hearings on the Act held on January 3, 2008.[4] At that time, Assemblyman Conaway described the Act "as New Jersey's whistle blower statute which tracks the federal law that allows private individuals with the knowledge of *past or present fraud* to the federal, and in this case, state government to sue on behalf of the government to recover the losses to the public for fraudulently obtained public monies."[5] (Emphasis supplied.) Hayling contends that this statement provides "an unqualified indication of legislative intent" that the NJFCA should be applied retroactively.

We disagree. The word that Hayling has singled out does not appear in a discussion of retroactivity—and, indeed, retroactivity is never discussed directly by the Assemblyman. Rather, the word upon which Hayling's argument hinges appears in a general description of the statute itself. Thus, it is far more reasonable to construe the phrase in which the word "past" is found as an expression of the Legislature's intent to permit statutory causes of action occurring after the effective date of the statute that are premised upon either completed acts of fraud or ongoing conduct.

---

[4] In making this argument, Hayling points to no ambiguity in the statement of the effective date of the NJFCA, and he ignores the principle that "[a] court should not 'resort to extrinsic interpretive aids' when 'the statutory language is clear and unambiguous, and susceptible to only one interpretation....' " *Di-Prospero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005) (quoting *Lozano v. Frank DeLuca Constr.,* 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004) (internal quotations omitted)).

[5] The record of Assemblyman Conaway's statements is available in audio only at http://www.njleg.state.nj.us/media/archive_audio2.asp?KEY=AJU& SESSION=2006.

Further, we note that the Assemblyman's statement did not constitute an official "Sponsor's Statement" as envisioned by the Court in *Deaney v. Linen Thread Co.*, 19 *N.J.* 578, 584–85, 118 *A.*2d 28 (1955), and there deemed one of the extrinsic aids that may be consulted in construing a statute's meaning, but rather, was testimonial in nature and never incorporated in the context that Hayling suggests into any formal document. We thus decline to give any interpretive weight to the Assemblyman's testimony as construed by Hayling. *Cruz, supra,* 195 *N.J.* at 47–48, 947 *A.*2d 1228. Furthermore, we find it particularly noteworthy that the Assembly Judiciary Committee Statement to Senate Committee Substitute for Senate Bills 360 [6] and 1892 with committee amendments, dated January 3, 2008—the date of Assemblyman Conaway's testimony—specifically provides: "*Effective Date.* The substitute takes effect on the 60th day after enactment." The same effective date language appears in Assembly Judiciary Committee Statement to Assembly Committee Substitute for Assembly Bills 3428 and 2186, also dated January 3, 2008. It is thus clear that if Assemblyman Conaway intended his statement as an implied acknowledgment of retroactivity, the Judiciary Committee rejected his position. *See Cruz, supra,* 195 *N.J.* at 47–48, 947 *A.*2d 1228 (determining witness statements, unaccompanied by legislative action, to provide an insufficient basis for construing a statute to apply retroactively).

 Nor do we find that a retroactive interpretation of the NJFCA must be implied as "necessary to make the statute workable or to give it the most sensible interpretation." *Gibbons, supra,* 86 *N.J.* at 522, 432 *A.*2d 80. The Act establishes a *qui tam* action as a means of policing fraud on state government, thereby recognizing a cause of action that had previously been unavailable under the laws of New Jersey. Construing the Act as prospectively applicable in no way destroys its functionality, as was the

---

[6] Senate No. 360 is the bill at issue here; the other bill concerned Medicaid fraud.

case in *Rothman v. Rothman*, 65 *N.J.* 219, 223–24, 320 *A.*2d 496 (1974) (applying the State's newly enacted equitable distribution statute retroactively so as to avoid the "difficult if not impossible task," *id.* at 223, 320 *A.*2d 496, of determining the date of acquisition of each marital asset and to avoid the probability that the full effect of the newly-enacted statute "would not be felt for at least a generation." *Id.* at 224, 320 *A.*2d 496.).

 Further, retroactivity is not otherwise required for the reasonable application of the Act. While it is possible that, if the statute were applied retroactively, the State could recover additional funds paid by it as the result of false claims, we find no evidence that the Legislature envisioned such additional potential recoveries when enacting the NJFCA. The fact that reach of an ameliorative statute could be broader does not constitute a sufficient reason, without support in the legislative history, for declaring a statute to be retroactive. *See Cruz, supra,* 195 *N.J.* at 42, 947 *A.*2d 1228 (declaring system for compensation of injured workers to be remedial and entitled to a liberal construction) and at 48 (nonetheless, determining not to retroactively apply amendments to the Workers' Compensation Act increasing the level of death benefits).

 The *Gibbons* Court also recognized, as an exception to the presumption of prospective application of statutes, instances in which amendatory statutes were ameliorative or curative in nature. However, the NJFCA is not "ameliorative"—a concept that has been utilized only in a criminal context. *See Kendall v. Snedeker,* 219 *N.J.Super.* 283, 286, 530 *A.*2d 334 (App.Div.1987) (limiting applicability of concept to criminal cases); *In re Smigelski,* 30 *N.J.* 513, 527, 154 *A.*2d 1 (1959) (holding a statutory amendment restricting a juvenile's possible exposure to commitment was ameliorative and, for that reason, could be applied retroactively).

Further, the NJFCA is not "curative" as we have defined that term. We have held that the "curative" exception "generally includes 'curative acts [which] are made necessary by inadver-

tence or error in the original enactment of a statute or in its administration.'" *Kendall, supra,* 219 *N.J.Super.* at 287, 530 *A.*2d 334 (quoting 2 Sutherland, *Statutory Construction,* § 41.11 at 410 (4th ed. 1973)). The NJFCA "cures" nothing through amendment, but instead independently establishes a *qui tam* cause of action to benefit the State. *Compare 2nd Roc–Jersey Assocs. v. Morristown,* 158 *N.J.* 581, 605, 731 *A.*2d 1 (1999) (finding the Legislature's amendment to the statutory definition of Special Improvement Districts (SIDs) to permit municipalities to exempt residential properties from such districts for the purpose of imposing assessments to be curative, when it remedied what the Legislature perceived to be our misapplication of the law); *Twiss, supra,* 124 *N.J.* at 469, 591 *A.*2d 913 (declaring the Uniform Unclaimed Property Act to be curative and thus retroactive because it improved the existing statutory scheme by unifying the law of unclaimed property and conformed New Jersey law to that of other jurisdictions); *Gibbons, supra,* 86 *N.J.* at 524, 432 *A.*2d 80 (holding that an amendment to the equitable distribution statute excluding from distribution all property acquired during the marriage by way of gift, devise or bequest except interspousal gifts would be given retroactive effect, in part, because it "is curative insofar as it reflects the Legislature's attempt to improve a statutory scheme already in existence.").

█ The final factor recognized in *Gibbons* applies when "the expectations of the parties may warrant retroactive application of a statute." *Gibbons, supra,* 86 *N.J.* at 523, 432 *A.*2d 80. The Court found such a circumstance to exist in *2nd Roc–Jersey, supra.* There, municipalities had established SIDs as a means of encouraging economic growth and employment, but many had excepted residential properties from assessments levied to accomplish the statutory purposes. In an unreported decision in *Gonzalez v. Borough of Freehold,* No. A–3476–92 (App. Div. June 30, 1994), *certif. denied,* 147 *N.J.* 576, 688 *A.*2d 1052 (1997), we upheld the constitutionality of the statute authorizing the establishment of SIDs, but invalidated the provision of a municipal SID ordinance

that exempted residential properties because the provision violated the statutory definition of a SID as "an area within a municipality designated by municipal ordinance as an area in which a special assessment on *all* property within the district shall be imposed." *N.J.S.A.* 40:56–66(b) (emphasis supplied).[7] Thereafter, the Legislature amended *N.J.S.A.* 40:56–66(b) to expressly permit municipalities to exempt residential properties, residential portions of mixed-use properties, and parcels with any number of residential units or vacant properties within a SID from special assessment. *See L.* 1995, c. 170. As we previously noted, the Court deemed the amendment retroactive as curative. *2nd Roc–Jersey, supra,* 158 *N.J.* at 605, 731 *A.*2d 1. As additional support for its holding, the Court noted "the expectations of many of the New Jersey municipalities that have enacted SIDs ... allow the amendment to be applied retroactively." *Ibid.* In contrast to the circumstances described in *2nd Roc–Jersey,* retroactive application is not required to meet expectations here, as to which there could have been none.

In summary, even if we embark upon the expanded analysis that Hayling urges, we find no basis for a conclusion that the NJFCA should be applied retroactively. We decline to consider whether such retroactive application would be constitutional, determining such an analysis is unnecessary, given our affirmance of the motion judge's conclusion that the NJFCA should only be given prospective effect. *Randolph Town Ctr., L.P. v. Cnty. of Morris,* 186 *N.J.* 78, 80, 891 *A.*2d 1202 (2006).

## IV.

Hayling makes an additional argument that the motion judge erred in dismissing his action *in toto,* pointing to allegations of his complaint that concern conduct occurring after the effective date of the NJFCA. To the extent that Hayling's claims in this regard

---

[7] We take our description of this decision from the Court's opinion in *2nd Roc–Jersey, supra,* 158 *N.J.* at 587, 731 *A.*2d 1.

can be factually supported, he may seek to amend his existing complaint to specifically assert such claims or file a new action in which such claims are raised.[8] We therefore reverse the order on appeal only to the limited extent that it may be construed as dismissing such post-Act claims with prejudice.

We decline to address Hayling's argument that this matter should be consolidated with the pending action by CMS against the State, regarding the trial judge to be in a better position to determine, after reviewing the procedural posture of the two actions, whether consolidation would be appropriate.

Affirmed in part and reversed in part.

---

[8] We note that a timely filed new action would not be barred by the applicable statute of limitations. *N.J.S.A.* 2A:32C–11 (establishing a six-year limit "after the date on which the violation of the act is committed").